HUBER et al. v. WILSON.—126 S. W. (2d) 893.

Eastern Section. May 20, 1938.

Petition for Certiorari denied by Supreme Court, March 1, 1939.

J. H. Hodges and John Jennings, Jr., both of Knoxville, for plaintiffs in error.

Homer Wallace, of Clinton, and Kennerly & Key, of Knoxville, for defendant in error.

PORTRUM, J. The plaintiff, B. F. Wilson, a resident of Anderson County, Tennessee, sues the defendants, Huber and Huber Motor Express, a partnership composed of N. F. Huber, Louis H. and William T. Huber, whose residence and place of business was in Knox County, Tennessee, operating an interstate business as a carrier under a license issued under and by authority of the Federal Motor Carrier Act of 1935, 49 U. S. C. A., secs. 301-327. The suit is for personal injuries sustained in a collision between the car operated by the plaintiff and a bus operated by the servant of the partnership, which accident occurred in the county of the plaintiff's residence. Suit was instituted in Anderson County, the home of the plaintiff, and summons issued to Knox County and served upon the designated agent of the partnership, who was appointed by the partnership to receive service of process as its agent in suits instituted in the state of Tennessee and growing out of the interstate commerce traffic, as was required by the Act of Congress. Federal Carrier Act of 1935,

49 U. S. C. A., Section 321, subsection (c). This summons was served upon the designated agent of the partnership in Knox County and return made to the court in Anderson County; the defendants composing the partnership and also the designated agent of the partnership filed pleas in abatement to the cause of action, upon the ground that the venue lay in Knox County, the situs of the partnership business and the residence of the partners, and not in the county of the residence of the plaintiff or the place of the accident. The substance of the plea is that since the defendants are residents of Tennessee, and the plaintiff is a resident of Tennessee, then the general law as to venue prevails as provided in transitory actions, and that the Federal statute has no application, its purpose being to bring nonresident defendants before the courts of the state in which the plaintiff resided and where the cause of action arose. It is insisted on behalf of the plaintiff that the defendants are engaged in interstate commerce and that the Federal Government has regulated it by express enactment by the statute cited, and provided for the service of process upon the defendant carrier applicable to all causes of action, and that the regulation in reference to the service of process occupies the field to the exclusion of the state's right to provide for the service of process; the argument being that the Federal statute supersedes the state law in reference to the service of process upon defendants in causes of action growing out of the violation of interstate commerce as defined by the Federal Motor Carrier Act.

The plaintiff demurred to the plea in abatement and the trial judge sustained the demurrers, and this is the basis of the first assignment of error. The Federal Act requires as a prerequisite for carrying on an interstate carrier's business by motor that the carrier lodge with the Railroad and Utilities Commission, in this state, the name and address of a resident agent with power to receive and accept service of process in suits instituted in the state. This Federal Act is different from the State Act of like purport only in the person or the agent designated to receive the service, the state law providing that a public officer designated in the statute be constituted the nonresident company's agent to receive the service, while the Federal statute provides that the company may appoint a private individual by lodging his name and address with a state official who is designated in the act. There is no material difference in the Federal Act and the State Act with the exception that under the state law the acts are applicable only to nonresidents of the state, generally nonresident corporations qualifying to do business under the laws of this state, but the Federal Act is applicable everywhere. Under the law of the state there are other statutory provisions providing for the service of process upon the nonresident corporation doing business in this state, when it maintains an office or an agency within the state, and in construing these acts the courts have held that

the method provided for the service of process is not an inclusive method but a cumulative method and since this is true the plaintiff may bring the defendant before the court by complying and conforming to the provision of either act. Cartmell v. Mechanics' Insurance Co., 167 Tenn., 498, 71 S. W. (2d), 688. The remedy of service being cumulative, then the plaintiff had the legal right to select the county of his residence and place of the accident as the trial county (Carter v. Schackne (Tenn. Sup), 114 S. W. (2d), 787; Carroll v. Matthews, 172 Tenn., 590, 113 S. W. (2d), 742), and the Federal statute in no way restricting the rights of the plaintiff in this case as defined by the decisions construing the state law then it is not necessary to determine the Federal question, i. e., Is the method provided by the Federal statute exclusive? In view of the cited holdings the trial court correctly sustained the demurrer, and the assignment of error is overruled.

This case was tried twice in the lower court; on the first trial there was a hung jury and to save its right to its motion for a directed verdict made at the conclusion of all the evidence, the partnership made a motion for a new trial and filed a wayside bill of exceptions (individual defendants composing the partnership will be referred to as the partnership and treated as singular or designated as a company), and upon the second trial the jury brought in a verdict in favor of the plaintiff in the sum of $6500 and the judgment entered accordingly. Another motion for a new trial was filed, which was overruled and an appeal in error prosecuted to this court.

The practice in this court is to first review the first trial, and if the trial judge properly overruled the motion for a directed verdict, then to review the record of the second trial, but in this case the record of the facts of the case in both trials are so similar that it will only be necessary to review the evidence one time, the court being of the opinion that if the verdict should have been directed in the first case it likewise should have been in the second, because there is no matrial variance in the plaintiff's proof. Upon the first trial the plaintiff made certain replies to questions asked him, while upon the second trial he does not deny that he made these replies, but states that he cannot recall his replies. Now, by giving the defendants credit for the plaintiff's replies made to the questions upon the first trial, the court can review the evidence of both trials at one time and determine if there is evidence to support the verdict.

The plaintiff's declaration contains two counts, the first being a common law count upon the facts of the case, alleging the negligent operation of the motor truck upon the highway in the night time during a heavy rain by running too fast without a proper lookout and other omissions of duty. The second count is based upon the statute regulating the operation of motor vehicles upon the highway, charging, in the words of the statute, the willful and reckless oper-

ation of the motor truck endangering life and property, and detailing certain acts and omissions prohibited by the statute. There is no attack made upon the declaration and we pass from it without further reference to it, the defendant having filed a plea of not guilty bringing in issue the facts of the case.

The plaintiff, fifty-nine years of age, is a former Justice of the Peace of Anderson County, a farmer, and engaged as a side line as an agent of an insurance company; on the night of January 18, 1936, he left the city of Knoxville for his home in Anderson County, taking the route known as U. S. Highway No. 25 West, which runs from Knoxville to Clinton, in Anderson County, and from there into the state of Kentucky and north. He left Knoxville between five and six o'clock p. m., traveling in a T-Model Ford coupe alone. It was a cold, dark, drizzling and rainy night; and the wind was blowing. Some miles out of Knoxville he stopped at the Airplane Filling Station on Beaver's Ridge, purchased gasoline and had his windshield washed and wiped off by an attendant who served him. His automobile was not equipped with an automatic windshield wiper, but had a hand wiper which the driver could use from time to time as necessity required.

The highway was constructed of concrete and was 20 feet in width. The center was marked or designated by the usual black line. This filling station was about one mile from the place of the accident. The plaintiff testifies that when he left the filling station he kept to his right side of the road, watching closely the black mark to his left, and drove his car within one and a half or two feet of the concrete on his right. That he could see through his windshield and he saw the black line in the center of the road and kept to the right of it, but that he had to look closely to it and could see but a short distance in front of the car; such is the substance of his testimony. And while traveling over the highway in this manner, which is straight for a long distance, there suddenly appeared in front of him the truck of the defendant, and that he was traveling at the rate of about ten miles per hour, the truck moving rapidly struck him immediately after coming within his vision demolishing the side of his automobile and rendering him unconscious. He knew nothing from the instance of the collision until he regained consciousness three weeks later in the hospital. He only had a glimpse of the truck before it struck him, but at the time of the collision he testified that he was upon his right side of the road within a foot and a half or two feet of the edge of the concrete, and that the truck was upon its left side of the road and upon the plaintiff's right side of the highway. This was his testimony upon both trials. If this testimony is true there can be no doubt but what the defendant's driver was negligent in operating the truck, and the plaintiff is entitled to recover. The defendant insists that there is other uncontradicted evidence in the record to

the contrary of the facts as testified by the plaintiff, and that the physical facts as developed disproved the plaintiff's testimony. The plaintiff was asked upon cross-examination if immediately before the collision he had not passed a V-8 Ford automobile and had not crowded this V-8 automobile off of the road by driving his car across the black line and onto his left side of the highway. He answered that he did not remember passing the V-8 automobile or crowding it off of the highway. He stated that the road was full of traffic and that he passed so many cars he could not recall any particular car. The defendant introduced the four occupants of this V-8 Ford automobile and they testified that the plaintiff turned across the black line upon their side of the road immediately in front of them and that the driver of the V-8 had to turn sharply to his right and off of the concrete to avoid a collision with the plaintiff, and that they were traveling about 100 feet in front of the truck and having passed the plaintiff they were attracted by the collision of the plaintiff's car and the truck and stopped their car and went back to the scene of the accident. The plaintiff was unable to remember passing this car and therefore was unable to deny this testimony, and it is insisted by the defendant that it is uncontradicted and controlling. The court cannot agree to this conclusion, the evidence only made an issue for the jury, for the plaintiff had testified that he was driving upon the right-hand side of the roadway stating positively that he was to the left of the center line and within a foot and a half or two feet of the edge of the concrete, which concrete was 20 feet in width, and if he had turned to the left of the road 100 feet in front of the place of the accident this would not be conclusive proof that he had not regained his side of the road and was upon the left side of the road at the place of the accident, and under the described weather conditions prevailing that night the occupants of the V-8 could easily have been mistaken in the conclusion that the plaintiff was upon his left side of the road and laboring under this misapprehension the driver could have turned to his right and off of the concrete attempting to avoid a collision, when as a matter of fact he was deceived in the location of the plaintiff's car by the bright lights. It is a matter of common experience that drivers of cars and occupants are often deceived in the location of passing cars in the night time with glaring headlights, and having passed it is difficult to locate with accuracy the position of a car upon the highway at the point of passing. In view of the driver's inability to speak normally it becomes in fact more or less a matter of his opinion, and should not be considered a positive statement of facts binding upon the court without reference to other testimony. In view of the unreliability of this character of evidence even though given by the witness in the best of faith, the trial court should submit the issue to the jury to be determined in view of the surrounding facts and circumstances, especially when uncorroborated by other

undisputed evidence. And this evidence is contradicted by the plaintiff, notwithstanding he cannot recall passing the car, for he states that he was driving his car upon this straight line of road well over upon his right side of the road.

■ There are no physical facts in proof which are not subject to contradiction or explanation, and proof of physical facts to discredit and discard positive testimony of the plaintiff must be of this character; there are certain truck tracks upon the shoulder of the highway and it is argued that the tracks demonstrate that the truck was over on its right side and off the concrete at the time of the accident. There is no question upon the identity of the tracks, the truck had dual wheels, and the track was a dual track. These tracks extended from the truck after it had stopped on beyond the disabled automobile of the plaintiff and towards Clinton. This is proof of a physical fact that must be explained and it is explained. Broken glass and the debris caused by the accident extended down the road and towards Clinton for 40 or 50 feet, and this evidence shows that the collision in fact occurred west of the termination of the tracks, and that the car was carried back towards Knoxville by the force of the collision in the contact with the truck and finally thrown to the rear of the truck with the two front wheels setting upon the shoulder, leaving the car diagonally across the highway facing towards Clinton or westward. And the plaintiff traveling to the west he was deposited upon the left side of the highway. A wallet containing certain papers was thrown out of the car and to the right of the highway, together with some of the tools, to the west of these tracks, and the position of these articles indicate that the plaintiff was hit upon his side of the road and not to the left as claimed by the defendant. And the driver of the truck was asked:

"Q. Did you feel the impact of the collision? A. Yes, I felt it hit.

"Q. Where was it, in front when it hit you? A. No, on the side of me, on the back along the side of me.

"Q. What did you do then? A. I pulled out on the mud and I figured I would turn over and I swung back kind of where it was a little more solid and stopped."

He states when he felt the impact he pulled out, and this negatives the idea that he pulled over before the impact.

■ The Ford was hit behind the front fender on the left side, and the truck bore evidence of being struck about two feet to the rear of the front of the body. The plaintiff's proof shows that a short distance to the west of the collision there is a large hole on the defendant's side of the road and that the truck crossed over the black line of the center of the road to straddle this hole and was in the act of turning back to its right side of the road when it ran into the plaintiff's car upon the plaintiff's right side of the road. Much stress is laid upon the fact that the plaintiff's car was equipped with a hand

windshield wiper, that it was raining hard, the windows of the car were closed because of cold weather, and these conditions made it impossible for the plaintiff to see and this rendered his testimony that he was upon the right side of the road untrustworthy. He testifies that he could see, and that he was driving 10 miles per hour and we think it a question for the jury to determine whether he could see or not. Certainly the court should not discredit the witness because his car was not equipped with the most modern windshield wiper.

 The defendant's driver testifies that he was following the Ford V-8, and had been for some time, at a rate of about 30 miles per hour; that he first saw the plaintiff's car when it came around the V-8, and that it was driving upon the defendant's side of the road and across the center line, at the time it was 100 feet away, and by an application of the emergency brake he could bring his truck to a stop within 15 to 20 feet, he did not apply the emergency brake or do anything to avoid the collision except turn to his right and, as he claims, off of the concrete but as the quoted facts show he turned off of the concrete only at the time of the collision. At one place he states that he applied his brakes, and another that he applied them lightly for fear of turning over. The plaintiff contends that if this evidence of the defendant's driver is true, then that the driver was guilty of wanton negligence, as defined and condemned by the statute, in operating this heavy truck at the rate of 30 miles per hour upon a dark, windy, rainy night, and seeing the plaintiff's automobile 100 feet in front of the truck upon the wrong side of the road traveling along slowly, and then takes no precaution to avoid a collision with plaintiff's car in its predicament. These conditions and the proven facts made an issue for the jury to determine if the defendants were guilty of ordinary negligence or willful negligence under the statute. We think reasonable minds might conclude that the operation of this truck in the manner described evinces ''such entire want of care as would raise presumption of conscious indifference to consequences.'' Consolidated Coach Co., Inc., v. McCord, 171 Tenn., 253, 258, 102 S. W. (2d), 53, 55. And such a justifiable conclusion raises an issue for the jury. The court is of the opinion that the trial judge correctly overruled the motion for a new trial based upon the motion for a directed verdict in each of the trials.

 This case required two days for a trial and was concluded on the 17th day of July, when the defendant applied for and was allowed until July 30 to file a motion for a new trial, but which was filed on the 23rd of July, during which time the defendant examined the record in search of errors; and as to be expected many alleged errors were unearthed, and set forth in eighteen assignments of errors, requiring for their discussion seventy-five pages of brief. This court has read and considered all of them, but will not take them up in detail because of the great space required to discuss them. Some of

them go to the admission and conclusion of evidence, and others to the charge including the giving and failure to give certain special requests. The evidence forming the basis of assignment tended to establish or refute the issues raised upon the statutory counts of the declaration; and the criticism to the charge has reference to the statutory counts of the declaration.

The verdict of the jury can be rested upon the first count, or common law count, of the declaration, and the errors complained of not bearing directly upon this count under the holding of the court they are rendered innocuous and do not justify a reversal even in the event of error so long as it does not affirmatively appear that the defendants were injured thereby. Tennessee Central Ry. Co. v. Umenstetter, 155 Tenn., 235, 291 S. W., 452. The plaintiff proved under his first count that he was proceeding slowly well upon his right-hand side of the road with his lights burning when the defendant's truck running at a rapid rate ran to its left side of the road and ran into him, demolishing his car and injuring him. If the jury believed and accepted this evidence as their verdict indicated they did do, then it is difficult to see how erroneous technical definitions of rules of law could have injured the defendants. The jury being men of common sense know that this state of facts creates liability on the part of the defendants and it would take more than a technical error in the charge to sway them from this conclusion. After examining these special requests given and refused and the charge as given, the court is of the opinion that there is no affirmative error justifying a reversal and to require a third trial of this lawsuit because of these alleged technical errors would work an unjustifiable hardship upon the litigants and the courts. The rules of law may have been stated with more precision, but we do not think any faulty definition misled the jury in determining the issue presented.

 The sixth assignment of error in reference to testimony which was excluded was wrongfully excluded under the authority of Power Packing Co. v. Borum, 8 Tenn. App., 162, but this is an immaterial error not justifying a reversal. When a sudden emergency arises and the defendant acting according to his best judgment takes a wrong and negligent course when a safe course is open, causing injury, and the emergency is not attributable to his negligence, then his mental attitude showing his best judgment becomes material and he can testify as to his attitude. In this case the driver testified as to what he did and the presumption is that he acted upon his best judgment. We can't see that a statement from him to the effect that he was doing the best he thought he could do would add any appreciable weight to the defendant's testimony. The trouble is the facts indicate that he did not do what he said he did which rendered the reason for following the course immaterial.

 Plaintiff's counsel in arguing to the jury made reference to

the McCord case, supra, and started to state some of the facts, but upon exception he turned from the facts and read a headnote defining a rule of law. This act is assigned as error, but it was not relied upon at the time for the trial judge was not required to rule upon it, and no exception was taken, the parties passing from it. This conduct was not preserved and would not justify a reversal had it been.

The final assignment is that the verdict is excessive. It is not claimed that the injury sustained does ont justify the verdict or the amount awarded, for the plaintiff received a severe skull injury and is still suffering with a blood clot which affects his speech and locomotion and is a serious permanent injury. It is argued that the contributory negligence of the plaintiff should reduce the verdict; if the plaintiff was well over on his side of the highway traveling slowly, with his lights burning, and the defendant's truck ran over upon the highway at a rapid rate, striking his car, demolishing it and seriously and permanently injuring him, it is difficult to see where the plaintiff was guilty of any contributory negligence. He says he was able to see through the windshield, and the court is not justified in disbelieving this statement, but if he were not able to see because of the rain and the darkness, which condition would have been alleviated had his car been equipped with an automatic windshield wiper, which might have enabled him to have better protected himself against the negligent conduct of the defendant, then this assumption, for it is only an assumption, is too remote. If the defendant could not complain at the plaintiff's equipment, then the fact that the plaintiff could not see was immaterial so long as the plaintiff was operating his car properly upon his side of the road, and his inability to see was in no way the proximate cause of the injury. The amount of the verdict not being excessive compensation for the injuries sustained, the court is not justified in reducing it because of the plaintiff's contributory negligence.

The assignments of error, for the reasons above given, are overruled, and the judgment below affirmed with costs.

McAmis and Ailor, JJ., concur.