## MADDEN v. TRUCKAWAY CORPO-
## RATION.

### No. 669.

District Court, D. Minnesota,
Fourth Division.

July 27, 1942.

John M. Palmer and Stinchfield, Mackall, Crounse & Moore, all of Minneapolis, Minn., for defendant.

John J. McKasy and Thompson, Hessian & Fletcher, all of Minneapolis, Minn., for plaintiff.

NORDBYE, District Judge.

The question presented is whether valid service of process can be made on an agent appointed under Section 321(c), Title 49 U.S.C.A. (the Motor Carrier Act), in an action of this character against a non-resident corporation, which has never qualified to do business in this State; does not conduct any business herein; and has no property or any of its officers in this State. The defendant is engaged in the transportation business with its headquarters and domicile in the State of Michigan. It transports motor cars by truck and is authorized by the Interstate Commerce Commission to engage in interstate business in many states in the Union, including the State of Minnesota, under the Federal Motor Carrier Act. This Act, among other things, requires a carrier to designate an agent for service of process in each State where it operates, and compliance therewith has been made by the defendant in this State. This portion of the Act, 49 U.S.C.A. § 321(c) reads:

"Designation of agent for service of process. Every motor carrier shall also file with the board of each State in which it operates a designation in writing of the name and post-office address of a person in such State upon whom process issued by or under the authority of any court having jurisdiction of the subject matter may be served in any proceeding at law or equity brought against such carrier. Such designation may from time to time be changed by like writing similarly filed. In the event such carrier fails to file such designation, service may be made upon any agent of such motor carrier within such State."

The nature of this action is essentially this: In 1934, the defendant had an authorized capital stock of 10,000 shares at $10 par value, and prior to October 15, 1934, of the 555 outstanding shares of their capital, plaintiff held 115 shares. The outstanding stock apparently was held by plaintiff and four other persons. On October 15, 1934, defendant issued and sold to its existing stockholders other than plaintiff 445 shares of its capital stock at $10 per share without the authorization or knowledge of the plaintiff or affording him an opportunity to purchase his pro-rata share. It is alleged that this was done in violation of the laws of Michigan. On April 2, 1936, defendant declared a stock dividend of 100% on its outstanding stock, but plaintiff was only issued 115 shares of the dividend stock instead of 231 shares, which he would have received had he been afforded his preemptive right to subscribe to the issue of October 15, 1934. He contends that he did not discover that he had been deprived of such preemptive rights until April, 1940, when he made due demand on the officers and directors for an opportunity to exercise his preemptive right to subscribe. In this proceeding, plaintiff offers $1,160 in payment for the stock for which he claims the right to subscribe, and seeks to recover from the defendant the cash dividends payable on such stock from 1935 to 1941, inclusive, in the sum of $25,000. He seeks the aid of this Court in addition to require defendant, upon the payment of $1,160, to issue to him 116 shares of its capital stock as of October 15, 1934, and 116 shares—the stock dividend— as of April 2, 1936.

It will be observed that plaintiff proceeds in equity and seeks to obtain a decree from this Court determining and settling certain alleged rights accruing to him as a stockholder of a Michigan corporation and to exercise certain visitorial powers over this corporation and its internal affairs. This action was commenced in State Court by the service made upon the agent designated under the Motor Carrier Act. Thereafter, on the grounds of diversity of citizenship and the requisite amount in controversy, the matter was removed to this

Court. In response to the motion to quash service, plaintiff urges that there are no limitations expressed in the Act as to the character or nature of the proceedings in law and equity in which service may be made upon the designated agent. He points out that the Act broadly provides that the carrier shall designate a person upon whom process "issued by or under the authority of any court having jurisdiction of the subject matter may be served in any proceeding at law or equity brought against such carrier." It is plaintiff's position, therefore, that, in light of this all-inclusive language, without limitation or restriction, Congress intended to provide a process statute which would be available to any person in proceeding against an interstate carrier in any action in the courts of this State, regardless of the nature or character of the proceedings. If one merely considers the language of this subdivision and accepts it literally, ignoring the purposes and objects of the Act, it may well be that plaintiff's position is entirely tenable. But that Congress ever intended to interfere with the internal policies of the States with respect to the acquisition of jurisdiction in their local courts, and to supplant their various process statutes, is indeed most improbable, if not in conflict with the limitations on the power of the Federal government. This does not mean that, in its own proper sphere, Congress cannot legislate and enact process statutes, even though this procedure in certain types of litigation may serve as a cumulative remedy to that afforded by the statutes of the States. But it must be evident that Congress is not concerned with providing means for obtaining jurisdiction in the State of Minnesota over a dispute between a local stockholder and a Michigan corporation involving the stockholder's alleged preemptive right to the issuance to him of certain stock in such corporation. Under the commerce clause of the Constitution, Art. 1, § 8, cl. 3, Congress has exclusive jurisdiction and authority over all matters pertaining or relating to interstate commerce. It had enacted a comprehensive act regulating transportation by interstate motor carriers. Obviously, it was necessary for Congress to pass some statute with reference to the service of process on the carriers who were authorized to conduct an interstate business under the Act. There are numerous provisions in the Act with reference to the regulation and supervision of carriers and their amenability to proceedings directed to the enforcement of the same. Apparently, Congress had in mind that the public should be protected by reason of accidents growing out of the negligent use of motor vehicles engaged in interstate transportation, and also that shippers should be protected in the event of loss of property shipped in such commerce. Section 315 authorizes the Commission to require the filing of a suitable surety bond, conditioned to pay, within the amount of such bond, any final judgment recovered against such motor carrier for bodily injuries to, or the death of any person resulting from, the negligent operations of the motor vehicles operating under the permit. Likewise, the Commission is authorized to prescribe suitable rules and regulations whereby surety bonds are to be furnished by the carrier, conditioned upon the carrier's making compensation to shippers for all property coming into its possession in connection with its transportation service. The District Courts, under Section 322, are authorized to issue writs of injunction or other process restraining the carriers and their agents from violating the provisions of the Act. Undoubtedly, there are other provisions to which reference may be made indicating that it was anticipated that various proceedings might be commenced from time to time in connection with, and in relation to, the Act in the various States where the carriers were licensed to operate, and in order to obtain jurisdiction, it was necessary to provide for the appointment of an agent upon whom process could be served.

In disposing of this motion, it is not necessary to determine the exact scope or type of proceedings in which service upon the designated agent herein might be sustained. Suffice it to say, that Congress could not have intended that this statute should be resorted to for service of process in an action that does not have any relationship to and is not even remotely connected or concerned with the duties, acts or practices of the carrier in conducting the interstate business in which it is licensed under the Act. I am convinced that, when the language of the process statute is read in connection with the general purposes and objects of the Act, it seems reasonably clear that, when Congress used the language "in any proceeding at law or equity brought against such carrier," it necessarily implied that such proceedings in law or equity must arise under or be in connection with or in relation to, the activities of the carrier in interstate transportation.

As illustrative of the necessary limitations to be implied in the construction of the Act, reference may be made to the last sentence of subdivision (c), Section 321, which reads: "In the event such carrier fails to file such designation, service may be made upon any agent of such motor carrier within such State." The statute does not define the term "agent", but as used it probably would be given a very liberal construction. It seems inconceivable that it was intended that, in absence of a designation of an agent, service upon any type of an agent would vest jurisdiction in controversies having no relationship to defendant's business as an interstate carrier. For instance, in the present situation, absent the appointment of an agent, this defendant would not be "present" within the State as that term is used by the Minnesota decisions in determining its jurisdiction over foreign corporations. There were only two instances since 1936 when defendant did any interstate business in Minnesota. These occurred on February 28 and March 2, 1942, when it transported two automobiles from Pontiac, Michigan, to Minneapolis, Minnesota. Under these circumstances, no jurisdiction could be obtained over this defendant under any State law or statute, and no cogent reason has been suggested why Congress should have intended to establish an exclusive process statute or procedure to obtain jurisdiction over the person of the carrier within the State, so as to vest jurisdiction in a local court in a type of controversy entirely foreign to the jurisdiction of the Federal government.

It is elementary that every State within its own sphere of action has exclusive right to provide the method by which its courts may obtain jurisdiction over the person or res. The only jurisdiction which Congress has attempted to exercise over this defendant is in regard to matters arising out of and in connection with its interstate transportation as a motor carrier. It is an entirely reasonable and necessary presumption, therefore, that, when Congress enacted the process statute, it only intended to provide means whereby the defendant could be made amenable to process in matters concerning which Congress had assumed jurisdiction under the Federal constitution. Consistent with reasonable legislative intent, every statute should, if possible, be construed in harmony with Constitutional limitations. It would indeed present an anomalous situation and one which would tend to further obliterate the line of demarcation between State and Federal rights if it should be assumed that Congress by the enactment of this process statute had intended to interfere with the State's exclusive right to provide means whereby foreign corporations should become subject to the jurisdiction of the local courts in controversies as to which the Federal government was without constitutional power to legislate. A literal interpretation of the Act in question should not be countenanced when it would manifestly lead to anomalous and absurd results which could not have been intended by the framers. No particular difficulty should arise in according to the language used in the process statute a sensible construction which is in harmony with the evident intention of Congress, if due effect and emphasis is given to the causes and purposes which motivated the adoption of the entire Act. In Thompson v. Terminal Shares, 8 Cir., 104 F.2d 1, at page 8, will be found the following:

" 'A thing which is within the intention of the makers of a statute is as much within the statute as if it were within the letter; and a thing which is within the letter of the statute, is not within the statute, unless it be within the intention of the makers.' People v. Utica Ins. Co., 15 Johns., N.Y., 358, 381, 8 Am.Dec. 243; Territory of Hawaii v. Mankichi, 190 U.S. 197, 212, 23 S.Ct. 787, 47 L.Ed. 1016; Barrett v. Van Pelt, 268 U.S. 85, 90, 91, 45 S.Ct. 437, 69 L.Ed. 857."

In Heydenfeldt v. Daney Gold & Silver Mining Company, 93 U.S. 634, at page 638, 23 L.Ed. 995, the Supreme Court stated: " * * * ' If a literal interpretation of any part of it would operate unjustly, or lead to absurd results, or be contrary to the evident meaning of the act taken as a whole, it should be rejected. There is no better way of discovering its true meaning, when expressions in it are rendered ambiguous by their connection with other clauses, than by considering the necessity for it, and the causes which induced its enactment."

This Court has been referred to no case directly in point on the factual situation presented, but it will be observed that there is a marked diversity of opinion among the courts as to the interpretation of this statute. Kuris v. Pepper Poultry Co., Inc., 174 Misc. 801, 21 N.Y.S.2d 791, held that it was the clear intent and purpose of Congress to limit this process statute solely to the commercial, financial and business aspects

of interstate highway transportation, and that, in order to obtain jurisdiction in any civil proceeding against the carrier, service must be made under the New York Civil Practice Act. In Schneir v. Tishman, 176 Misc. 427, 27 N.Y.S.2d 728, the court held that the statute in question was not limited, as the court in the Kuris case indicated, and sustained service in an action brought against the carrier by the consignor of merchandise delivered to the carrier and which merchandise was lost in interstate transportation. In Sansbury v. Schwartz, D.C.D.C., 41 F.Supp. 302, the court sustained service against a carrier under the statute in question in an action resulting from the negligent operation of a licensed interstate carrier truck while operating in the State of Delaware. The United States District Court for the Southern District of New York, in a decision rendered on December 27, 1941, Mortimer W. Brenner v. Queen City Coach Co.,[1] followed the reasoning of the Kuris case, and service of process on the designated agent was quashed. See, also, Huber v. Wilson, 23 Tenn.App. 109, 126 S.W.2d 893; King v. Robinson Transfer Motor Lines, Inc., 219 N.C. 223, 13 S. E.2d 233. It will be observed that, in these cases where the court has sustained service, the proceedings were directly related to the defendant's activities as an interstate carrier. That is, the cause of action grew out of interstate commerce—the interstate highway transportation—which the Act assumes to regulate and supervise.

Defendant also asserts that jurisdiction must be declined because the present action seeks to regulate its internal affairs and would require this Court to exercise visitorial powers. Obviously, this Court would be required to determine plaintiff's rights under Michigan law, and if plaintiff should succeed, it would be necessary to issue an appropriate decree requiring the issuance of stock to him by a company whose property, records, officers and business are entirely outside of this State. Whether this Court should decline jurisdiction on this ground alone need not be decided, but reference to these facts does tend to emphasize the practical need of a strict as well as a common-sense construction of the process statute in question in the present situation.

Therefore, in harmony with the views heretofore expressed,

It is ordered that the attempted service of the summons and complaint in the above-entitled action upon the defendant, by leaving a copy thereof with one John O. Loeffler, as process agent of the defendant under the Federal Motor Carrier Act, be, and the same hereby is, quashed and set aside.

An exception is reserved to the plaintiff.

---

[1] No opinion for publication.