Argued February 23; demurrer sustained, writ discharged
April 26, 1949

# STATE ex rel. BLACKLEDGE v. LATOURETTE

205 P. 2d 849

*John Gordon Gearin,* of Portland, argued the cause for plaintiff. With him on the brief were Koerner, Young, Swett & McColloch, of Portland.

*James P. Cronan, Jr.,* of Portland, argued the cause for defendant. With him on the brief were Schafer, Holbrook & Cronan, of Portland.

Before LUSK, Chief Justice, and BRAND, BELT, ROSSMAN, KELLY and BAILEY, Justices.

ROSSMAN, J.

This is a proceeding in mandamus which was instituted in this court by the State on the relation of L. M. Blackledge, a resident of Carson, Skamania County, Washington, against the Honorable Earl C. Latourette, Judge of the Circuit Court of this State for the Fifth Judicial District. The matter is before us upon a demurrer to the writ, which submits that the latter does not state a cause of action.

The purpose of this proceeding is to secure an order requiring Judge Latourette to quash the service of the complaint and summons in a personal injury action which one Lee Kirkpatrick, Jr., commenced July 30, 1948, in Judge Latourette's court against the relator, who operates motor trucks in interstate com-

merce which enter Oregon. Service was made upon one Clem Hedges, of Garibaldi, Oregon, whom the relator had designated as its process agent under the requirement of § 221, subd. (c) of the Motor Carrier Act, 1935, being 49 U. S. C. A., § 321(c).

The plaintiff presents two main contentions: (1) The Circuit Court erred when it refused to set aside the service of the complaint and summons; (2) section 1-403, O. C. L. A., discriminates against nonresidents of this state and is, therefore, unconstitutional.

From the writ, it appears that the relator and the aforementioned Lee Kirkpatrick, Jr., are residents of the State of Washington. Relator resides in Carson, Skamania County, and Kirkpatrick in Washougal, Clark County. October 27, 1947, Kirkpatrick was injured in Skamania County when a truck owned by the relator collided with a school bus which Kirkpatrick was operating. The complaint in the personal injury action, according to the writ, alleged:

> "At said times said equipment of defendant was actually engaged in interstate commerce. in that the driver thereof was returning to Carson, Washington, from a trip to Portland, Oregon, where a load of lumber originating in Washington had been delivered."

The personal injury action submitted that under the circumstances just mentioned the accident occurred while the relator was engaged in interstate commerce.

We now quote from the plaintiff's brief:

> "Prior to July 30, 1948, the relator had filed with the Interstate Commerce Commission a designation in writing giving the name of Clem Hedges of Garibaldi, Tillamook County, Oregon, as a person upon whom process might be served, as required by the provisions of the Federal Motor Carrier Act (49 U. S. C. A., Section 321(c)) * * *

"Thereafter, and within the time prescribed by law, the relator filed in the action his special appearance and motion to quash, together with supporting affidavit. Subsequently the matter was submitted to the defendant, as Judge of the said Circuit Court, for determination, and on the 29th day of October, 1948, defendant entered an order denying relator's motion to quash."

Section 321(c) of 49 U. S. C. A. says:

"Every motor carrier shall also file with the board of each state in which it operates a designation in writing of the name and post-office address of a person in such state upon whom process issued by or under the authority of any court having jurisdiction of the subject matter may be served in any proceeding at law or equity brought against such carrier. Such designation may from time to time be changed by like writing similarly filed. In the event such carrier fails to file such designation, service may be made upon any agent of such motor carrier within such state."

The relator, in attacking the service of process, argues:

"Whatever the nature of the shipment of lumber between Carson, Washington, and Portland, Oregon, may have been, the shipment had been terminated by delivery at Portland, Oregon, and the truck had returned to the county in Washington where the trip had originated."

Although the truck had returned to the county in which its owner resided, there is no claim that it had returned to its actual starting point or to its base of operations. Upon its movement from Carson into Portland the truck carried a load of lumber. We understand that the plaintiff concedes that that movement was made in interstate commerce.

To support the contention made in the words last quoted, the plaintiff cites *Madden v. Truckaway Corp.,* 46 F. Supp. 702, a decision by the District Court for the District of Minnesota. Although the defendant in that case was engaged in the transportation of goods by motor trucks, that action, unlike this one, did not arise out of the operation of a vehicle. Its genesis was the issuance of some of the capital stock of the corporation which was the defendant in that case. That action had nothing in common with the one before us except the fact that in that case, as in this one, service was made upon the agent appointed by the carrier pursuant to 49 U. S. C. A., § 321(c), previously quoted. The Truckaway Corporation, defendant in that action, was domiciled in the State of Michigan and conducted no business in Minnesota. The plaintiff was one of its five stockholders and claimed that it discriminated against him in violation of the laws of Michigan in a stock transaction. The plaintiff, who resided in Minnesota, instituted his action in that state and had service made there upon the agent whom we have already described. The decision under review set the service aside. It held that Congress, in enacting § 321(c), did not intend to provide a means whereby service could be had upon interstate carriers in all kinds of litigation against them, but only in proceedings which arise under, in connection with or in relation to the activities of the carrier as a carrier. We found nothing in that decision which is adverse to the service which was made in this case.

Wasie Common Carrier Application, 4 M. C. C. 726, held that a motor truck which is returning to its base of operations, even though empty, is engaged in interstate commerce. The decision arose out of an applica-

tion for a certificate of public convenience and necessity authorizing a continuance of operations as a common carrier under the "grandfather" clause (§ 206(a)) of the Motor Carrier Act, 1935. The Commission stated:

"It has been applicant's practice since establishment of its Kansas City and St. Louis routes to move empty vehicles from Kansas City to St. Louis, or from St. Louis to Kansas City, over U. S. Highway 40, when additional equipment was needed for use in transporting shipments to northern destinations. While such movements are wholly within Missouri, they are incidental to the transportation of property in interstate or foreign commerce beyond such points, and a question arises as to whether they are subject to the provisions of the act. Section 203(a) (19) of the act reads as follows:

" 'The "services" and "transportation" to which this part applies include all vehicles operated by * * * any motor carrier * * * and used in the transportation of passengers or property in interstate or foreign commerce or in the performance of any service in connection therewith.'

"The empty movement of these vehicles clearly falls within this definition of the services and transportation subject to the act, and consequently authority from us therefor is necessary."

See, to like effect, United Truck Lines, Inc., Transfer of Empty Equipment, 32 M. C. C. 676, and Consolidated Freight Lines, Inc., Common Carrier Application, 11 M. C. C. 131.

■ We think that the return trip in which the empty truck was engaged when it collided with the vehicle operated by Kirkpatrick was incidental to its operations in interstate commerce and that the mere fact that it was empty did not nullify its status as an interstate carrier. We cannot subscribe to the plaintiff's contention.

We come now to the plaintiff's contention that service upon a process agent appointed under 49 U. S. C. A., § 321(c), does not give the court jurisdiction over the person of the defendant unless service was made in the state in which the delict occurred, or unless the parties to the action reside in the state in which service was made. Concerning the specific action out of which this proceeding arose, the plaintiff contends that since neither the relator nor the defendant reside in Oregon, and since the alleged action did not occur in this state, the courts of this state do not have jurisdiction over that action.

We shall now review the plaintiff's citations. He cites "8 O. C. L. A., § 115-128 et seq. (as amended)." Sections 115-128 to and including 115-132, O. C. L. A., were entitled by the compiler "non-resident owners and operators." Sections 115-128 to and including § 115-131 were repealed by 1943 Oregon Laws, Chapter 145, § 5. Section 115-132 as amended by 1941 Oregon Laws, Chapter 7, the material part of which permits motor trucks owned by nonresidents, if licensed under the laws of the jurisdiction where the owner resides, to operate in this state in interstate commerce "to the extent that in the foreign * * * state * * * of his residence like exemptions and privileges are granted vehicles duly registered and licensed under the laws of and owned by residents of this state." That provision does not appear to be helpful in the solution of the problem before us. *Schneir v. Tishman,* 176 Misc. 427, 27 N. Y. Supp. (2d) 728, presented the following situation: (1) The defendants, nonresidents of New York, were engaged in interstate transportation of goods by motor trucks and had complied with 49 U. S. C. A. § 321(c) by appointing one Shapiro as their New

York process agent; (2) the plaintiffs, who were engaged in business in New York, delivered a carton of merchandise to the defendants for transportation into New Jersey; (3) the carton was not delivered. The plaintiffs instituted action under review to recover judgment for the value of the merchandise. Service was made upon Shapiro. The defendants challenged its validity. In sustaining the service, the decision said:

> "There would be little or no protection to or regard for the welfare of a shipper if under the laws of his domicile he were required to secure redress in a distant state for the conversion of his goods or other wrong by the motor carrier. * * * Further by filing the prescribed designation in this instance defendant may be deemed to have consented to the service of process on the person designated as conferring jurisdiction of the court below over the defendants."

The plaintiff calls attention to the fact that in that case, unlike the one before us, one of the parties, to-wit the plaintiffs, resided in the state in which the action was filed. *Scott v. Southeastern Greyhound Lines,* 5 F. R. D. 11, was another case in which the plaintiff was a resident of the district in which he filed his action. *Kuris v. Pepper Poultry Co.,* 174 Misc. 801, 21 N. Y. Supp. 2d 791, does not mention the state in which the plaintiff resided nor the one in which the cause of action arose. It appears, however, that the defendant was domiciled in Delaware. It did no business in New York, but had appointed an agent in that state, pursuant to the demands of 49 U. S. C. A., § 321(c). The material part of the decision is epitomized as follows in *Schneir v. Tishman,* supra:

> "In that action service of process on defendant, a foreign corporation, was made pursuant to the

provisions of the federal statute, and it was held that compliance with the laws of New York as to service of process upon foreign corporations is essential to jurisdiction in actions brought in this state against such corporations; that the intent of Congress was to restrict the act to the regulation of commercial practices involved in motor transportation, rather than to make it applicable to other considerations; that the person designated to accept service of process in the Kuris case did not come within the purview of Civil Practice Act, § 229, sub. 2; that the policy of the state as expressed in the state laws was controlling and excluded any other mode of service."

In *Esperti v. Cardinale Trucking Corporation,* 263 App. Div. 46, 31 N. Y. Supp. 2d 253, the plaintiff was a resident of New York. The defendant, a New Jersey corporation, was subject to the Motor Carrier Act, 1935, and service was made upon it by serving the agent it had designated. The court held that in order to render service under the Motor Carrier Act valid, it is not essential that "the cause of action arose out of commerce transacted by the foreign corporation within the State."

*A. W. Stickle Co. v. Interstate Commerce Commission,* 128 Fed. 2d 155, was not governed by § 321(c) of Motor Carrier Act, 1935. The action was instituted by the Interstate Commerce Commission and jurisdiction was specially conferred by 49 U. S. C. A., § 322(b).

In *Wynne v. Queen City Coach Co.,* 49 F. Supp. 103, the plaintiff was a resident of New Jersey; the defendant was a resident of North Carolina; the alleged tort out of which the plaintiff's injury arose occurred in Tennessee; and the action was instituted in New Jersey. The defendant, in obedience to 49 U. S. C. A., § 321(c), had designated one Gerber as its process agent

in New Jersey. Service was made upon him. The defendant moved to vacate the service. We quote from the decision:

"It is urged by the defendant, however, that the statute is not applicable where, as here, the cause of action arose without the territorial jurisdiction of the court. The language of the statute is unambiguous and, in the opinion of the court, is not susceptible of such a narrow construction."

In *Huber v. Wilson,* 23 Tenn. App. 109, 126 S. W. 2d 893, both the plaintiff and the defendant were residents of Tennessee, and the cause of action arose in that state. Service upon the statutory agent of the defendant carrier was, of course, held valid.

In *North-South Freightways v. Slaten,* (Tenn. App.), 186 S. W. 2d 336, the parties were not residents of Tennessee, but the accident out of which the action arose occurred in that state.

We believe that we have stated the material facts in each of the foregoing cases and the basis of each decision. We know of nothing in any of them directly determinative of the problem as to whether or not the service in the case before us was valid.

We come now to two decisions cited by the plaintiff which it believes passed upon facts similar to those in the instant case. *Lee v. Acme Freight Lines, Inc.,* 54 F. Supp. 397, was instituted in the District Court for the Southern District of Georgia. Neither the plaintiff nor the defendant resided in Georgia and the cause of action did not arise in that state. The action was instituted to recover compensation and liquidated damages under the Fair Labor Standards Act of 1938. Although the defendant, a carrier, had appointed a process agent, in compliance with the requirements of the Motor Carrier Act, 1935, service

was not made upon that person. The defendant moved to dismiss on the ground that venue was improperly laid. The motion was sustained. The court pointed out that § 51 of the Judicial Act, 28 U. S. C. A., § 1391, 1401, requires civil suits to be brought in the district whereof the defendant is an inhabitant, and found that the issues presented by the defendant's motion were governed by that act. It held that since service was not made upon the statutory agent, the plaintiff could not avail himself to the holding in *Neirbo Co. v. Bethlehem Shipbuilding Corp.*, 308 U. S. 165, 60 S. Ct. 153, 84 L. Ed. 167, 128 A. L. R. 1437, to the effect that the appointment of a process agent under the demands of a state statute is a manifestation of consent to be sued in the federal courts of the district for which the agent was appointed. In so holding, the decision said:

" * * * A foreign corporation which appoints a statutory agent under a law requiring it as a condition of doing business in a state will be presumed to consent to suit in the local courts, state and federal, and to service upon that agent to bring it before the court, in matters relating to the business done in that state. But here the statutory agent was not served; * * * ."

Thus, it will be seen that although in that case, as in the personal injury action out of which this proceeding arose, neither of the parties resided in the district of the forum and the cause of action did not arise within it. Service, however, was not made upon the process agent. In view of the fact, the court did not employ any provision of the Motor Carrier Act. The holding in that case, in our belief, is not controlling in this case.

In *King v. Robinson Transfer Motor Lines, Inc.*, 219 N. C. 223, 13 S. E. 2d 233, the facts, as stated by

the court, were: "The plaintiff and defendant are both from Tennessee. The cause of action arose in that state." Service was made upon the process agent appointed by the defendant under the requirements of 49 U. S. C. A., § 321(c). The defendant appeared specially and moved to dismiss on the ground of purported invalidity of the service. In affirming the order of the lower court, which sustained the motion, the decision cited *Old Wayne Mutual Life Assn. v. McDonough,* 204 U. S. 8, 27 S. Ct. 236, 51 L. Ed. 345, and *Simon v. Southern Railway Co.,* 236 U. S. 115, 35 S. Ct. 255, 59 L. Ed. 492. It engaged in no analysis of its own. Since the facts before us are the counterpart of those that were before the North Carolina court, we shall review the Old Wayne and Simon decisions.

The Old Wayne decision reversed a judgment rendered by a Pennsylvania court in favor of the beneficiary upon a policy of life insurance which the defendant life insurance company had executed and delivered in Indiana. No personal service was had upon the insurance company, but service was made upon the Pennsylvania Insurance Commissioner under a statute of that state which required insurance companies upon engaging in business in Pennsylvania to appoint a process agent or suffer process to be served upon the commissioner. In reversing the judgment, the court said:

> "Conceding then that by going into Pennsylvania, without first complying with its statute, the defendant association may be held to have assented to the service upon the Insurance Commissioner of process in a suit brought against it there in respect of business transacted by it in that Commonwealth, such assent cannot properly be implied where it affirmatively appears, as it does here, that the business was not transacted in Pennsylvania.

Indeed, the Pennsylvania statute, upon its face, is only directed against insurance companies who do business in that Commonwealth—'in this State.'"

The Simon decision held void a judgment which Simon recovered in the Louisiana courts against the railway company upon a purported cause of action which arose in Alabama. No personal service of process was had upon the railway company, but service was made upon the Louisiana secretary of state under a statute of that state which required foreign corporations doing business within the state to appoint a process agent or submit to service upon the state official. The decision took pains to point out that it was based "on the special fact, relied on in the court below, that in this case the cause of action arose within the State of Alabama, and the suit therefor, in the Louisiana court, was served on an agent designated by a Louisiana statute." In holding the service invalid, the decision said:

"Subject to exceptions, not material here, every State has the undoubted right to provide for service of process upon any foreign corporations doing business therein; to require such companies to name agents upon whom service may be made; and also to provide that in case of the company's failure to appoint such agent, service, in proper cases, may be made upon an officer designated by law. Mutual Reserve Assn. v. Phelps, 190 U. S. 147; Mutual Life Ins. Co. v. Spratley, 172 U. S. 603. But this power to designate by statute the officer upon whom service in suits against foreign corporations may be made relates to business and transactions within the jurisdiction of the State enacting the law. Otherwise, claims on contracts wherever made and suits for torts wherever committed might by virtue of such compulsory statute be drawn to the jurisdiction of any State in which the foreign corporation

might at any time be carrying on business. The manifest inconvenience and hardship arising from such extra-territorial extension of jurisdiction, by virtue of the power to make such compulsory appointments, could not defeat the power if in law it could be rightfully exerted."

It will be observed that the statutory agents mentioned in the Old Wayne and the Simon cases were appointed pursuant to state legislation. In the case at bar the appointment was made pursuant to the demands of a Congressional act. That was also true in the North Carolina case, but the court made no special mention of the fact. The statute of Louisiana, which received mention in the Simon decision, and that of Pennsylvania, which was mentioned in the Old Wayne decision, were based upon the fact that courts still adhere to the theory that a corporation is an entity apart from its stockholders, and that, therefore, although a natural person who enters a foreign state cannot be required to appoint a process agent, such a demand can be made of a corporation when it migrates. The legislation under which the agents were appointed in the North Carolina and the instant cases but not based upon the narrow principle of constitutional law just mentioned, but upon the fact that the federal constitution assigns the regulation of interstate commerce to the national government.

We pause to observe that we have now reviewed all of the authorities which the plaintiff submitted in support of the contention stated in a preceding paragraph.

We think that the trend of federal decisions is away from the holdings in the Old Wayne and the Simon decisions. *Cohen v. American Window Glass Co.*, 126 Fed. 2d 111, is an indication of the trend. The plain-

tiffs, as shareholders of the defendant corporation, sued the latter to restrain it from putting into effect a proposed corporate merger and from taking some other contemplated action. The suit was instituted in New York and service was made under a New York statute upon the New York secretary of state. The decision sustained the service. We now quote from the decision:

"The point is made, however, that even this express authorization is not valid under the authorities. It is true that the Supreme Court did suggest possible constitutional difficulties in Simon v. Southern R. Co., 236 U. S. 115, 35 S. Ct. 255, 59 L. Ed. 492. But later cases seem to have made the matter one only of interpretation of the state law. Thus, in Robert Mitchell Furn. Co. v. Selden Breck Const. Co., 257 U. S. 213, 216, 42 S. Ct. 84, 85, 66 L. Ed. 201, Justice Holmes said: 'Unless the state law either expressly or by local construction gives to the appointment a larger scope, we should not construe it to extend to suits in respect of business transacted by the foreign corporation elsewhere.' See, also, Missouri Pac. R. Co. v. Clarendon Boat Oar Co., 257 U. S. 533, 535, 42 S. Ct. 210, 66 L. Ed. 354; Davis v. Farmers Co-operative Equity Co., 262 U. S. 312, 315, 43 S. Ct. 556, 67 L. Ed. 996; Morris & Co. v. Skandinavia Ins. Co., 279 U. S. 405, 409, 49 S. Ct. 360, 73 L. Ed. 762. This trend toward allowing state law to govern jurisdiction and venue over foreign corporations reached its furthest step in Neirbo Co. v. Bethlehem Shipbuilding Corp., 308 U. S. 165, 60 S. Ct. 153, 84 L. Ed. 167, 128 A. L. R. 1437, where a designation of agent under state law was a waiver of federal venue. It is difficult to see how procedural due process may be offended as to causes arising out of the state and not as to causes within; the real reason and justification for the statute is that a corporation ought not to gain immunity by disobeying the law directing the appoint-

ment of an agent. In view of this later trend, we consider the Simon case not now an authority to the contrary, and therefore hold that service on the secretary of state is authorized by New York law and is valid.''

The above renders it clear that the problem before us is only one of statutory construction.

We have already mentioned the holding in *Neirbo Co. v. Bethlehem Shipbuilding Corp.,* supra. It appears to us that that holding took a long step away from the decisions in the Old Wayne and Simon opinions. We quote from the Neirbo decision the following:

"* * * The scope and meaning of such a designation as part of the bargain by which Bethlehem enjoys the business freedom of the State of New York, have been authoritatively determined by the Court of Appeals, speaking through Judge Cardozo: 'The stipulation is, therefore, a true contract. The person designated is a true agent. The consent that he shall represent the corporation is a real consent. He is made the person ''upon whom process against the corporation may be served.'' * * * The contract deals with jurisdiction of the person. It does not enlarge or diminish jurisdiction of the subject-matter. It means that whenever jurisdiction of the subject-matter is present, service on the agent shall give jurisdiction of the person.' Bagdon v. Philadelphia & R. Coal & I. Co., 217 NY 432, 436, 437, 111 NE 1075, LRA 1916F, 407 Ann Cas 1918A, 389. A statute calling for such a designation is constitutional, and the designation of the agent 'a voluntary act.' Pennsylvania F. Ins. Co. v. Gold Issue Min. & Mill. Co., 243 US 93, 61 L ed 610, 37 S Ct 344.''

In view of that holding, it appears to us that 49 U. S. C. A., § 321(c), deals with venue as distinguished from jurisdiction over a cause of action.

*Sansbury v. Schwartz,* 41 F. Supp. 302, rendered by the District Court for the District of Columbia, is cited by the defendant. The plaintiff in the action was a resident of Maryland who was injured in that state by a vehicle of the defendant. The latter resided in Delaware and was engaged in the interstate operation of motor vehicles which entered the District of Columbia. He had complied with the provisions of the Motor Carrier Act, 1935, particularly with 49 U. S. C. A., § 321(c). Service was made upon the statutory agent whom he had appointed for the District of Columbia, and thereupon the defendant moved to quash service. In denying the motion, the court reasoned as follows:

"It is further urged that such designation of a process agent in the different States through which the motor carrier operates was not intended to give to the courts of any of such jurisdictions the power to adjudicate controversies, unless the injury complained of occurred within such jurisdiction. It has been repeatedly held by the Supreme Court that, where the requirement for the designation of a process agent is by a state statute, the implication is that such agency does not reach beyond matters which arise in that jurisdiction. It has also been held that a State cannot require a foreign corporation to submit itself to the jurisdiction of the courts of such State where it is engaged only in the solicitation of interstate business, and not otherwise engaged in business in such State. To hold otherwise, it is authoritatively said, would be offensive to the commerce clause of the Constitution, art. 1, § 8, cl. 3. But that has no application here, for the statute under consideration is an Act of Congress, which has plenary power to regulate interstate commerce. It has been held by the Supreme Court that a State cannot require an individual or partnership to designate an agent upon whom process can be made as a condition precedent for such individual or in-

dividuals to do business within the State, a power which is not questioned with respect to corporations. That, also, however, is not authority for the contention here made, as Congress can regulate motor carriers engaged in interstate commerce whether they be corporations or individuals. And that is precisely what the Congress has done in the Motor Carrier Act. Placing such carriers under the supervision and control of the Interstate Commerce Commission, it has in large measure assimilated them to interstate rail carriers, and has undertaken to integrate them with the national transportation system for purposes of control and regulation. It would appear from the terms of the Act in question that such motor carriers are treated as if physically present in each of the States through which they are licensed to operate, and, although they may not have physical property and station agents at all times within each jurisdiction, they are, for the purpose of answering process of the courts of such jurisdiction, legally to be found therein and inhabitants thereof. The cause of action here asserted is a transitory action, and one which a court of general jurisdiction may entertain wherever the defendant may be found.''

It is seen that that decision reached a conclusion directly opposite to the one announced in *King v. Robinson Transfer Motor Lines, Inc.,* supra. Both cases were decided in 1941.

■ Even if it could be said that no state, by enacting a statute which requires foreign corporations to appoint a local process agent, can require them to litigate in the local courts causes of action which arose elsewhere, no such situation confronts us in this case. The statute under which the relator's agent, Clem Hedges, was appointed was not enacted by Oregon, but by the Federal Government. Clearly, Congress, without violating any constitutional provision, can require a car-

rier engaged in interstate commerce to appoint in each state in which it operates a process agent and submit to the jurisdiction of the courts of every state in which it operates. Evidently the North Carolina court did not notice that fact. When the constitutional question is out of the way, there remains nothing but a question of statutory construction. That question can be stated this way: Does 49 U. S. C. A., § 321(c), mean that one who possesses a cause of action against an interstate motor carrier may sue the carrier in any state in which it has appointed a statutory agent, or does it mean that the suit must be filed in one of the following states: (1) where the cause of action arose; (2) where the plaintiff resides; or (3) where the defendant resides; and, if so, which one.

According to § 2-216, O. C. L. A.,:

"In the construction of a statute or instrument, the office of the judge is simply to ascertain and declare what is, in terms or in substance, contained therein, not to insert what has been omitted, or to omit what has been inserted; * * * ."

The language of 49 U. S. C. A., § 321(c), is sweeping and is free from qualifying passages. Nowhere does it manifest a preference for the state in which a prospective plaintiff dwells, nor for one in which the defendant lives, nor for the one in which the cause of action arose. It treats all states in which a process agent has been appointed with equal impartiality. We have no right to subtract anything from § 321(c) nor to insert preferences in it which the lawmaker omitted.

■ We do not think that *King v. Robinson Transfer Motor Lines, Inc.,* supra, was correctly decided. We agree with *Sansbury v. Schwartz,* supra. We do not believe that the fact that the parties to the personal

injury action are not residents of Oregon and that the injury did not occur in this state, prevented the plaintiff from filing his action in this state. We conclude that this contention of the defendant lacks merit.

The final contention of the defendant follows:

"1 O. C. L. A., Section 1-403, is unconstitutional in that it discriminates against non-residents of the State of Oregon who are entitled under the federal constitution to equal protection of the laws."

Section 1-403, O. C. L. A., follows:

" * * * In all other cases the action shall be commenced and tried in the county in which the defendants, or either of them, reside or may be found at the commencement of the action; provided, that in any action founded on an alleged tort, the same may be commenced either in the county where the cause of action arose or in the county where the defendants, or one of them, resides or may be found at the commencement of the action; provided further, that if none of the defendants resides in this state the action may be tried in any county which plaintiff may designate in his complaint."

The plaintiff's brief says:

"In the instant action it appears that the Relator has no place of business in the State of Oregon, does not maintain any office or mailing address therein, and engages in business in this State solely in an interstate capacity, having no employees or property within the state."

■ The relator contends that the clause of the above section of our laws which permits an action against a nonresident to be tried in any county which the plaintiff designates, denies to nonresidents the equal protection of the law. Obviously, the venue of actions against nonresidents must be laid in some county. In the process of classification for venue purposes, we

think that the legislature had a right to view non-residents different from residents, and to deem venue immaterial to them. We believe that the classification is valid: *Fratt v. Wilson,* 30 Or. 542, 47 P. 706, 48 P. 356; *Mutzig v. Hope,* 176 Or. 368, 158 P. 2d 110.

It follows from the foregoing that the demurrer must be sustained. We know of no amendment that can be made to the writ which will present a different question. An order will, therefore, be entered which will discharge the writ. Costs and disbursements will be awarded to the defendant.