GARDNER *et al. v.* PRICE.

(In Banc.  March 25, 1946.  Suggestion of Error Overruled May 13, 1946.)

[25 So. (2d) 459.  No. 36083.]

W. D. Womack, of Belzoni, for appellants.

J. H. Price, of Indianola, for appellee.

**L. A. Smith, Sr., J.,** delivered the opinion of the court.

This case has been here before under the style of Gardner et al. v. Cade, 190 Miss. 505, 200 So. 720, and was reversed and remanded to the circuit court for the reason therein stated. Accordingly, after remand to the circuit court, a motion to dismiss for lack of jurisdiction was sustained, thus leaving the status of the case unaltered in the court of the justice of the peace, which rendered the original judgment.

On August 12, 1940, this judgment was enrolled, and eight days later a writ of execution was issued, followed by a bill for injunction, filed by appellants, seeking perpetually to restrain the "Sheriff of Humphreys County, Mississippi, or any other officer of said country from levying on the property of complainants, or making any attempt to collect from them by virtue of said execution issued upon said void judgment." The original bill for injunction averred that appellants were summoned to answer the suit of Mattie Cade in the court of G. H. Hairston, Justice of the Peace of District No. 3 of Humphreys County, the trial to be the 25th day of February, 1939, which summons was personally executed upon appellants on the 18th day of February, 1939. On the 11th day of March, 1939, the justice of the peace docket indicates a judgment was rendered by default against appellants for the sum of $115. The case was sought to be appealed to the circuit court and from the circuit court here, resulting as stated supra.

The appellants in the application to the chancery court for an injunction to restrain the performance of the writ of execution upon the original judgment in the justice of

the peace court, as enrolled in the office of the circuit clerk, charge that the judgment rendered March 11, 1939, was void for two reasons: (1) "While the said date of March 11th, was a regular court day of the Justice of the Peace Court, and the case having been continued from time to time, and by agreement between counsel and the Justice of the Peace, the case was continued until after the adjournment of the February term of the Circuit Court of Humphreys County, and the Circuit Court of Humphreys County finally adjourned on the 13th day of March, 1939, and at the next term, by agreement between counsel and the Justice of the Peace, after the adjournment of the Circuit Court, the case in the Justice of the Peace court was to be tried, the next succeeding court day being March 25, 1939." (2) "It is and has been a rule and custom with attorneys and Justices of the Peace in Humphreys County to continue all Justice of the Peace matters during the terms of Circuit Court so that attorneys may be in attendance, and complainants are ready to verify by proof that the case of Mattie Cade versus complainants in the Justice of the Peace Court, upon which the judgment herein was rendered, was set for the 25th day of March, and the default judgment, as aforesaid, was rendered on that day and not on the 11th day of March, 1939."

The complainants below are the appellants here, and the judgment, which is the subject of this controversy, is the one alleged to have been rendered on the 11th day of March, 1939. The judgment was by default, and reads in part: "Each of said defendants being solemnly called three times in open court came not and each of said defendants wholly made default herein, the plaintiff in open court demanding it, it is considered by the court, and so ordered," etc.

A temporary injunction was issued on the original bill, and thereafter J. H. Price filed a petition to be permitted to intervene in this cause, alleging himself to be the owner, by assignment, of the judgment rendered in favor of

Mattie Cade against the appellants, and he was permitted to intervene as a party defendant in the chancery court. He demurred to the original bill on many grounds, and moved to dissolve the injunction, and filed suggestion of damages also. Appellants thereupon filed an amended petition to set aside and vacate the judgment, supra, and to grant them a trial on the merits, setting up the claim of a meritorious defense to the original suit in which the judgment was rendered and giving the details thereof in the amended bill, which concluded with a prayer for an injunction to restrain not only the sheriff, but also "any and all other persons from any attempt to levy an execution issued upon said judgment," and also a prayer that said injunction upon final hearing be made permanent and the original judgment in the justice of the peace court declared void, and the circuit clerk be directed to cancel the enrollment and the justice of the peace to cancel the judgment on his docket, and to grant the complainants a trial on the merits of the cause, as the same were alleged in the bill.

A demurrer was interposed to the amended bill and sustained, the injunction dissolved, and damages awarded to the appellee, Price. The appellants declined to plead further and final decree was entered against them denying all relief, from which they have appealed here.

There are other matters set up in the pleadings beside the one on which we think the case turns, but we deem it necessary to discuss this phase only, and that is, the justice of the peace rendered judgment against appellants on March 11, 1939, after having announced that the case would not be called for trial until March 25, 1939; and further, the custom in Humphreys County, when a case was to be tried at a term day of the justice of the peace while the circuit court was in session, automatically was to continue such justice of the peace trial until after the adjournment of the circuit court, which custom was generally recognized and practised by attorneys and justices of the peace. However, March 11, 1939 came during

a regular session of the circuit court, and pursuant to such recognized and definite custom, the causes then to be heard were due to be continued until March 25, 1939, after the last day of the session of the circuit court. The allegations of fact dealing with these matters in the pleadings of the appellants in the trial court were admitted by the demurrers.

It is true that the agreement of the justice of the peace to continue the case until March 25th is not alleged to have been made in open court, but taking the averments of the original and amended bills to be true, nevertheless appellants, as a result of this action of the justice of the peace, were lulled into a sense of security with reference to the court day of March 11, 1939, and entrapped, even though not deliberately, into the delusion that they could present their defense on March 25, 1939. If opposing counsel or party had objected, nevertheless it would have been within the power, whether within the authority or not of the justice of the peace, to continue the case. Ordinarily, continuances rest in the sound discretion of the trial judge, subject to review only for abuse of discretion, upon appeal, but this rule cannot apply to courts of justices of the peace for the reason, that upon appeal to the circuit court, such cases are tried there de novo. There is strength added to the claim of such agreement to pass the matter to March 25th by the further fact that no judgment was actually entered on the docket of the justice of the peace until several months later. So this agreement, strengthened as it was by such delayed entry of judgment and by custom among the lawyers and magistrates of Humphreys County regarding the continuance of cases in the courts of justices of the peace, when set for trial on a day during the regular term of the circuit court, created a situation wherein denial of the relief to appellants sought by them would be against good conscience. They, due to no fault of their own, had no opportunity to make their defense, which appears to us to be sufficiently meritorious to justify a verdict for appel-

lants, if established by competent and pertinent and sufficient evidence.

So, we think that, here, the judgment rendered against appellants March 11, 1939 is void. In dealing with this subject, the general rule is laid down in 34 Corpus Juris, Section 518(c), p. 299, under the title "Judgments." It is there said: "A Judgment rendered in the absence of defendant and of his counsel should be set aside where such absence was caused by their reliance on a statement made officially by the judge of the court that the case could not be reached, or would not be tried, before a certain date, . . . " This is not the universal rule, but since, in our judgment, it is the fairer view to take in such a situation, we prefer to align ourselves with it, especially on the facts of the instant case, where the demurrer admits the agreement was made, and violated, and appellants relying upon the agreement, were entrapped to their hurt, to the extent they have been denied the right to defend themselves, through no negligence or inadvertence of their own. It is not a question, it seems to us, of whether such a pronouncement by the court was a judicial determination, or of whether the court had authority to make it; but it is a question of fairness and conscience. The condoning of the acts of the justice of the peace here would lead to legal fraud against appellants, caused by the justice of the peace, to find themselves in a situation whereby, as here, he later, with knowledge of the situation, on demand of the plaintiff, could and did unfairly render judgment against them so misled; and this is to be coupled with the further reasonable inference that the justice of the peace and counsel for plaintiffs and defendants at the time were aware of the practice and custom with reference to deferring any steps in the justice of the peace court on its term day, where it occurred during a regular session of the circuit court.

Let us suppose that the justice of the peace, for some reason, changed his mind, either of his own volition or

upon persuasion. If he had then given notice to appellants' counsel sufficiently before the date of the judgment that a trial would be had, in spite of his agreement and the established custom, or within sufficient time after the date judgment was entered to enable appellants to perfect an appeal to the circuit court within the time allowed by law, where appellants could have had a trial de novo, the present situation could have been avoided by appellants, and would have, in all probability. It does not, indeed, appear from the record why the justice of the peace rendered judgment on March 11, 1939, in violation of his assurance to appellants' counsel, and of the custom of the bar and justices of the peace, to treat as continued all actions in such courts until adjournment of circuit court terms. The judgment does recite that plaintiffs were demanding its rendition on March 11th. But whatever the reason, the result was that appellants were precluded thereby from an opportunity of making a just and legal defense to the action. Appellants were guilty of no laches, but lost the benefit of their defense by a course of procedure they had a right to trust would not ensue.

A case not especially parallel on the facts with the case at bar, but containing sufficient similar elements to furnish an adequate analogy as to justify quoting therefrom the announcement of the policy of equity in dealing with void judgments at law, resulting from such procedure in the obtaining thereof as to make it against conscience to execute it, is one that has been in our jurisprudence a long, long time. Jones v. Commercial Bank of Columbus, 5 How. 43, 35 Am. Dec. 419. It is to be remembered, these appellants had no notice that the case here would be tried on March 11th; the last word they had from the court was that it would not be reached until March 25th. In the case cited supra, this Court said: "If notice is shown by the record, it is still competent for the party to show that the judgment has been obtained by fraud, or that by some unavoidable circumstance he was prevented from

making his defense. Therefore it has been determined, that if a party has a good defence at law, but has been prevented from using it by fraud or accident, unmixed with any fault or negligence on his part, a court of equity will relieve him by granting a new trial, or by a perpetual injunction. 2 Story's Equity 174.''

Therefore, in our judgment, the demurrers should not have been sustained and the injunction dissolved and damages awarded. The decree of the chancery court is reversed and the cause remanded and injunction reinstated until such final decree as may be rendered by the chancery court.

Reversed and remanded.

DISSENTING OPINION.

**Roberds, J.**, delivered a dissenting opinion.

While readily agreeing that appellants suffered an injustice, if they can establish the facts alleged in their bill, yet, in my opinion, the danger of the announced rule overbalances the injustice, if any, in a particular case. The bill alleges that on a day during the circuit court the attorney for appellants saw the justice of the peace in Belzoni and asked him to continue the case, to which the justice of the peace assented. That conversation did not take place in the courtroom of the justice of the peace while he was holding court. It was merely a personal conversation. There was nothing judicial about it. The justice of the peace had no power to continue the case except when his court was duly in session, nor should he have attempted to agree thereto without notice to opposing party. The announcement in 34 C. J., quoted in the main opinion, is careful to confine the statement of the judge to one made ''officially by the court.'' A footnote thereto cites Missouri, etc., R. Co. v. Crowe, 9 Kan. 496. In that case the Court said: ''If a statement of a judge out of court is judicial, then an attorney has the right to

rely on it, and plead it in any proceeding that may arise. If it is not judicial, then a party may rely upon it, but at his peril. If it is judicial, then the other side has a right to be present, is entitled to notice, and may be allowed to except. It is idle to attempt to show that such statements are judicial. They are like the statements of any one else, and a party trusts them at his peril. If they do not prove correct, then although the attorney may be surprised, yet he has no reason to complain. The opposing party is not to blame, and is entitled to have his cause heard when it is reached, regardless of what the judge said off the bench.''

Judicial judgments must have a finality. If they can be set aside because of some oral statement made by the judge off the bench unofficially, then there is no finality to them. They may be attacked and set aside years afterwards, as is being attempted here. Again, it would often happen that the opposing party would be helpless to meet the attack. Suppose the judge has died in the meantime? He cannot deny that the private conversation took place. It would frequently happen there could be no denial. As stated in the beginning the rule, in my opinion, is too dangerous.

**Sydney Smith, C. J.,** joins in this dissent.