403 So.2d 1292 (1981)
TRAILER EXPRESS, INC. and Jack M. Clements
v.
Nellie M. GAMMILL.
No. 52168.
Supreme Court of Mississippi.
September 30, 1981.
Cary E. Bufkin, Shell, Buford, Bufkin, Callicutt & Perry, Jackson, for appellants.
William H. Liston, Liston, Crull & Gibson, Winona, for appellee.
EN BANC:

ON PETITION FOR REHEARING
Petition of Appellee, Nellie M. Gammill, for rehearing of the cause is sustained. The original opinion of the Court is hereby withdrawn and substituted therefor is the following opinion:
This case originated in the Circuit Court of Montgomery County. Appellee, Nellie M. Gammill, filed her suit against appellant, Trailer Express, Inc., requesting damages for personal injuries growing out of a motor vehicle collision that occurred on August 18, 1978. The declaration was filed on September 14, 1979, and summons was issued under Section 13-3-63, Mississippi Code Annotated (1972). This section is commonly known as "Non-Resident Motorist Statute" and *1293 summons was properly served on the Secretary of State of Mississippi, as the statutory resident agent for non-resident motorists using the highways of this state. The summons was served on the Secretary of State on September 20, 1979, and was returnable to the next term of Circuit Court of Montgomery County that convened on the second Monday (the 8th) of October, 1979. The duly authorized agent of the appellant received the summons on September 25, 1979. No appearance was made in the cause by appellant and on October 19, 1979, toward the end of the twelve day term of court, appellee filed her motion for default judgment and for a writ of inquiry. This matter was heard on October 19, 1979, resulting in the circuit judge entering a final judgment in favor of appellee against appellant in the sum of $126,034.41.
On November 19, 1979, appellant, through its then attorney, filed a Motion to Quash Process and Set Aside the Default Judgment, with required affidavit. On the same date appellant filed a motion for an emergency hearing in vacation on its motion so that it would have sufficient time to appeal in the event of an adverse ruling before expiration of the appeal date from the original default judgment.
A hearing was had before the lower court on November 23, 1979, on appellant's motion. During the lower court hearing the attorneys for appellee and appellant made certain stipulations, some of which shall be hereinafter discussed in the decision of this cause. Appellant's attorney had witnesses present to testify on behalf of its motion and also expressed a desire to call appellee as an adverse witness for the purpose of eliciting from her the matters that occurred at the time of the writ of inquiry and default judgment. The lower court was of the opinion that the objection to such testimony should be sustained; however, he allowed appellant to question appellee for the purpose of its appellate record. After the hearing on appellant's motion, the court entered its order denying the motion in its entirety.
On its appeal, appellant assigns a number of alleged errors. In our opinion two appeal points dispose of the case. These are:
I. Does Section 221(c) of the Interstate Commerce Act [49 USCA § 10330 (1980)] preempt the method of service of process of the nonresident corporation in this case and is thereby the exclusive method of service of process?
II. Does this Court have the authority to reverse and remand for a hearing on damages only? If so, should that be done here?
Appellant contends that as it had appointed a resident agent in the records of the Mississippi Public Service Commission pursuant to the above federal requirement, service on this agent was the exclusive method of service of summons on the non-resident appellant corporation and service of summons on the Secretary of State under Section 13-3-63 was void. The Federal Motor Carrier Act § 221(c) provides as follows:
(c) Every motor carrier (including any motor carrier operating within the United States in the course of engaging in transportation between places in a foreign country and a place in another foreign country) shall also file with the board of each State in which it operates and with the Interstate Commerce Commission a designation in writing of the name and post office address of a person in such State upon whom process issued by or under the authority of any court having jurisdiction on the subject matter may be served in any proceeding at law or equity brought against such carrier. Such designation may from time to time be changed by like writing similarly filed. In the event such carrier fails to file such designation, service may be made upon any agent of such motor carrier within such state.
It is our opinion that appellee had her choice as to the manner of serving appellant. Section 13-3-63 was enacted by the Legislature under the police power of this state, providing that by accepting the rights and privileges of using the highways of this *1294 state, a non-resident appoints the Secretary of State of Mississippi as his "true and lawful attorney upon whom may be served all lawful process in any action or proceeding against him... ." (Emphasis added). The primary question is whether or not the Federal Motor Carrier Act and particularly the above section 221(c) void the police power application of Section 13-3-63. We do not find where an appellate court of last resort has passed on this precise question, but we do find identical questions in state lower courts and pronouncements of law in other appellate courts, including the Supreme Court of the United States, which indicate that the federal statute does not preempt a statute passed under Mississippi's police power regarding the use of its highways. Also federal and state courts have held that a federal statute does not preempt and void a state statute and prevent the state from exercising its police power unless the Congress in passing its act clearly manifested a mandate to do so. Napier v. Atlantic Coast Line R. Co., 272 U.S. 605, 47 S.Ct. 207, 71 L.Ed. 432 (1942); Allen-Bradley Local v. Board, 315 U.S. 740, 62 S.Ct. 820, 86 L.Ed. 1154 (1926); Maurer v. Hamilton, 309 U.S. 598, 60 S.Ct. 726, 84 L.Ed. 969 (1939); Southwestern Greyhound Lines v. Railroad Comm'n of Texas, 128 Tex. 560, 99 S.W.2d 263 (1936); Malone v. White Motor Corp., 435 U.S. 497, 98 S.Ct. 1185, 55 L.Ed.2d 443, on remand 8th Cir., 599 F.2d 283, aff'd 444 U.S. 911, 100 S.Ct. 223, 62 L.Ed.2d 166 (1978); Ray v. Atlantic Richfield Co., 435 U.S. 151, 98 S.Ct. 988, 55 L.Ed.2d 179 (1978); Katharine Gibbs School (Inc.) v. F.T.C., 612 F.2d 658 (2d Cir.1979); Pharmaceutical Soc. of State of New York, Inc. v. Lefkowitz, 586 F.2d 953 (2d Cir.1978); Conference of Federal Sav. & Loan Ass'ns v. Stein, 604 F.2d 1256 (9th Cir.1979); Amalgamated Transit Union Div. 819 v. Byrne, 568 F.2d 1025 (3rd Cir.1977); Northern States Power Co. v. State of Minnesota, 447 F.2d 1143 (8th Cir.1971); and Gerut v. Poe, 11 F.R.D. 281 (N.D.Ill., 1951).
In Gerut v. Poe, 11 F.R.D. 281 (N.D.Ill., 1951), the Court in discussing the preemption of a state process statute by federal statutes said the following:
It is elementary that every state within its own sphere of action has exclusive rights to provide the method by which its court may obtain jurisdiction over the person or res. The only jurisdiction which Congress has attempted to exercise over this defendant is in regard to matters arising out of and in connection with its interstate transportation as a motor carrier. It is an entirely reasonable and necessary presumption, therefore, that, when Congress enacted the process statute, it only intended to provide means whereby the defendant could be made amenable to process in matters concerning which Congress had assumed jurisdiction under the Federal Constitution.
In a well-reasoned opinion, a New York lower court in Kuris v. Pepper Poultry Co., Inc., 174 Miss 801, 21 N.Y.S.2d 791 (Sup.Ct. 1940), stated the following:
Plaintiffs urge that by virtue of the commerce clause of the Constitution (Article 1 § 8, cl. 3) Congress is vested with exclusive authority over matters of and pertaining to interstate commerce; that the enactment by Congress of the federal Motor Carrier Act is well within its constitutional power and that the enactment of the service of process provision, section 221, subdivision (c), [§ 321(c), 49 U.S.C.A.] thereof, is fully within the proper sphere of its action and therefore supersedes the state law on that subject (§ 229 Civil Practice Act); that it is hence controlling and exclusive and that the service made pursuant to section 221, subdivision (c) is valid; that jurisdiction has thus been acquired over the person of the defendant as a foreign corporation.
I am unable to accept this view. Firstly, it is held that so far as the federal Constitution is concerned, it is within the acknowledged power of every legislature to prescribe rules of procedure in courts of its own government. The establishment of courts of justice, within each state, according to its laws, and of the procedure in conjunction therewith, is the peculiar and exclusive province and duty of the state legislatures. 12 C.J. §§ 288, *1295 291, p. 826; 15 C.J. § 178, p. 854; 16 C.J.S. Constitutional Law § 128, pp. 312, 313, 328; 11 Amer. Juris. § 192, p. 892, Const. Law; Adams v New York, 192 U.S. 585, 599, 24 S.Ct. 372 [375] 48 L.Ed. 575; State v. LaPointe, 81 N.H. 227, 123 A. 692, 31 A.L.R. 1212; Cooley's Const. Lim., 8th Ed., vol. 1, p. 68. Secondly, a study of the provisions of the Motor Carrier Act reveals the intent and purpose of Congress under this Chapter 8, to confer upon the Interstate Commerce Commission jurisdiction as respects the commercial, financial and business aspects of interstate highway transportation and to leave untouched in the hands of the states control over their internal affairs, especially in view of the provisions in said Chapter 8 declaring the policy of Congress in enacting the Act in question. This intent of Congress to restrict the Act to the regulation of commercial practices involved in motor transportation, rather than to make it applicable to other considerations, clearly appears from section 202 of the Act, Part II. 49 U.S.C. § 302, 49 U.S.C.A. § 302, which reads as follows: "Sec. 302. Declaration of policy and delegation of jurisdiction to Interstate Commerce Commission. (a) It is hereby declared to be the policy of the Congress to regulate transportation by motor carriers in such manner as to recognize and preserve the inherent advantages of, and foster sound economic conditions in, such transportation and among such carriers in the public interest; promote adequate, economical, and efficient service by motor carrier, and reasonable charges therefor, without unjust discriminations, undue preferences or advantages, and unfair or destructive competitive practices; improve the relations between, and coordinate transportation by and regulation of, motor carriers and other carriers; develop and preserve a highway transportation system properly adapted to the needs of the commerce of the United States and of the national defense; and cooperate with the several States and the duly authorized officials thereof and with any organization of motor carriers in the administration and enforcement of this chapter."
When the question is whether a federal Act overrides a state law, the entire scheme of the statute must be considered. 11 Amer. Juris., § 176. p. 873, Const.Law. Nowhere in the Act does it appear to be the intent and purpose of Congress, in the enactment of this law, to interfere with or usurp the power of the states relating to matters of state internal policy, concerning the jurisdiction of their courts or with the procedure prescribed by their legislatures for the acquisition of jurisdiction by their judicial tribunals over foreign corporations. The clear intent and purpose of Congress was to limit the Act solely to the regulation of commercial practices. (21 N.Y.S.2d 795-796).
Another lower New York Court in Olson v. Midstates Freight Lines, Inc., 12 Misc.2d 897, 173 N.Y.S.2d 711 (Sup.Ct. 1958), in holding that the New York state non-resident motorist statute, similar to that of Mississippi, was not preempted by the federal Motor Carrier Act under section 221(c) said:
The defendant maintains that since it is a registered interstate motor carrier under the Motor Carrier Act of 1935, as amended, and had designated a person in this State as required by 49 U.S.C.A. § 321(c) upon whom service of process could have been made, service upon such person was the exclusive method of serving the summons and complaint upon the defendant in this action. Section 321(c) in part reads:
"(c) Every motor carrier * * * shall also file with the board of each State in which it operates and with the Interstate Commerce Commission a designation in writing of the name and postoffice address of a person in such State upon whom process issued by or under the authority of any court having jurisdiction of the subject matter may be served in any proceeding at law or equity brought against such carrier. * * In the event such carrier fails to file such designation, service may be made upon any agent of such motor carrier within such State."

*1296 The defendant cites no decisive authority in support of its contention and none has been found in which the precise question presented here has been decided.
It is needful in answering the question presented to consider the authority of the legislature of the State of New York to enact § 52 of the Vehicle and Traffic Law and the purposes of the Congress in enacting § 321(c) of Title 49 of the United States Code Annotated, as part of the Motor Carrier Act. Section 52 as hereinafter shown was enacted under the police power of the State.
Section 52 of the Vehicle and Traffic Law provides that the operation by a non-resident of a motor vehicle in this State, or the operation of a motor vehicle, trailer, or semi-trailer owned by a non-resident if operated in this State with his consent "shall be deemed equivalent to an appointment by such nonresident of the secretary of state to be his true and lawful attorney upon whom may be served the summons in any action against him, growing out of any accident or collision in which such nonresident may be involved * * *." The enactment of this section "is a valid exercise of police power, and is not in conflict with the requirements of due process." Leighton v. Roper, 300 N.Y. 434, 444, 91 N.E.2d 876, 882, 18 A.L.R.2d 537. In Hess v. Pawloski, 274 U.S. 352, 47 S.Ct. 632, 71 L.Ed. 1091, the court, in upholding the constitutionality of a Massachusetts statute similar in fundamentals to § 52 of the New York Vehicle and Traffic Law, said:
"The state's power to regulate the use of its highways extends to their use by non-residents as well as by residents. Hendrick v. State of Maryland, 235 U.S. 610, 622, 35 S.Ct. 140, 59 L.Ed. 385. And, in advance of the operation of a motor vehicle on its highway by a nonresident, the state may require him to appoint one of its officials as his agent on whom process may be served in proceeding growing out of such use. Kane v. State of New Jersey, 242 U.S. 160, 167, 37 S.Ct. 30 [31], 61 L.Ed. 222. That case recognizes power of the state to exclude a nonresident until the formal appointment is made. And, having the power to exclude, the state may declare that the use of the highway by the nonresident is the equivalent of the appointment of the registrar as agent on whom process may be served." 274 U.S. at page 356, 47 S.Ct. at page 633.
There could be no question of the application of § 52 of the Vehicle and Traffic Law to the instant case but for § 321(c) of Title 49 of the United States Code Annotated (Sweet v. Miller, Sup.Ct. Erie Co., 1933, 147 Misc. 806, 264 N.Y.S. 565).
The law is well settled that the intention of Congress to exclude states from exerting their police power must be clearly manifested. In Allen-Bradley Local v. Wisconsin Employment Relations Board, 315 U.S. 740, 749, 62 S.Ct. 820, 825, 86 L.Ed. 1154, the Court said:
"Furthermore, this Court has long insisted that an `intention of Congress to exclude states from exerting their police power must be clearly manifested.' Napier v. Atlantic Coast Line R. Co., 272 U.S. 605, 611, 47 S.Ct. 207, 209, 71 L.Ed. 432, and cases cited; * * *." In People v. County Transp. Co., 303 N.Y. 391, 103 N.E.2d 421, the action was brought to recover a penalty from the defendant, an interstate motor carrier. The Court said at page 399 of 303 N.Y., at page 426 of 103 N.E.2d:
"It was early said that State legislation is invalidated only if the Federal and State regulation[s] cannot either practically or logically exist together. Sinnot v. Davenport, 22 How. [U.S.] 227, 243, 16 L.Ed. 243. Even more important is the doctrine enunciated in a long line of cases, that `The intention of Congress to exclude states from exerting their police power must be clearly manifested.' Napier v. Atlantic Coast Line R. Co., 272 U.S. 605, 611, 47 S.Ct. 207, 209, 71 L.Ed. 432, and cases there cited; Allen-Bradley Local B. Board, 315 U.S. 740, 749, 62 S.Ct. 820, 86 L.Ed. 1154, and cases cited. Here we have in section 62 of the Public *1297 Service Law an exercise of police power affecting a bus line, a public utility, rendering a public service in the community. The basic applicable canon of statutory construction governing all the variations of exercisable police power was well stated as follows in Maurer v. Hamilton (309 U.S. 598, 614, 60 S.Ct. 726, 735, 84 L.Ed. 969): `As a matter of statutory construction Congressional intention to displace local laws in the exercise of its commerce power is not, in general, to be inferred unless clearly indicated by those considerations which are persuasive of the statutory purpose.'"
There clearly was no intent on the part of Congress in requiring an interstate motor carrier to designate a person upon whom service of process may be made in a State to supersede a statute, such as § 52 of the Vehicle and Traffic Law, which applies to all non-resident owners of motor vehicles operated by them or with their consent in this State. The purpose of § 321(c) [49 U.S.C.A. § 321(c)] was not to bestow a benefit or privilege upon motor carriers by curtailing the statutory rights of the residents of a state, but for the protection of shippers and persons injured by the carriers' motor vehicles while operated on State highways. In Madden v. Truckaway Corporation, D.C.Minn. 1942, 46 F. Supp. 702, at page 704, the Court said: "Apparently, Congress had in mind that the public should be protected by reason of accidents growing out of the negligent use of motor vehicles engaged in interstate transportation, and also that shippers should be protected in the event of loss of property shipped in such commerce."
In Huber v. Wilson, 1938, 23 Tenn. App. 109, 126 S.W.2d 893, the Court in a personal injury action upheld the service of process under 49 U.S.C.A. § 321(c) and stated that it was unnecessary to decide whether that method of service was exclusive. The Court, however, stated (126 S.W.2d at page 895): "Under the law of the state there are other statutory provisions providing for the service of process upon the nonresident corporation doing business in this state, and in construing these acts the courts have held that the method provided for the service of process is not an inclusive method but a cumulative method and since this is true the plaintiff may bring the defendant before the court by complying and conforming to the provision of either act."
There is a further consideration in construing § 321(c) [Title 49 U.S.C.A.]. This section does not authorize service of process upon an interstate motor carrier involved in a highway accident in a State in which it has designated a person upon whom service may be made when it is carrying only intrastate commerce at the time the accident occurs. Davies v. Mahanes, 4 Cir., 1950, 183 F.2d 671. It is not reasonable to assume that Congress intended that a person injured in a highway accident in which an interstate motor carrier is involved would have to determine at his peril the character of the freight being hauled, that is its loading and destination points, nor is it reasonable to assume that the State method of service of process upon an interstate carrier (Vehicle and Traffic Law, § 52), is superseded when the motor carrier is hauling one type of shipment and not superseded when carrying another type of shipment.
It appears to have been assumed in the following cases that service of process upon an interstate motor carrier in a State pursuant to § 321(c) is not an exclusive method of service. Esperti v. Cardinale Trucking Corp., 263 App.Div. 46, 31 N.Y.S.2d 253; Bullock v. Tamiami Trail Tours, 7 Misc.2d 109, 162 N.Y.S.2d 69; Schneir v. Tishman, 176 Misc. 427, 27 N.Y.S.2d 728; Kuris v. Pepper Poultry Co., Inc., 174 Misc. 801, 21 N.Y.S.2d 791.
The majority of this Court agrees that the reasoning in the above set out cases is accurate and should be followed. As stated, the intent and purpose of the Federal Motor Carrier Act was to regulate the commercial, financial and business aspects of interstate commerce as it relates to *1298 highway transportation. Congress properly saw fit to require that a resident agent be appointed in the records of the duly authorized regulatory agency of each state in which the carrier conducted business. Had Congress intended for the registered agent requirement to have preempted the police power of the state and voided the process statute on non-residents, they clearly would have set this intention out. We have seen that Section 221(c) in requiring registered agents to be designated with each state regulatory agency, clearly stated that process may be served on that agent in any proceeding at law or equity brought against such carrier. It does not mandate exclusive process on that agent. Had Congress intended that to be the case, it could and would have said so. Furthermore, the section ended by saying, "in the event such carrier fails to file such designation, service may be made upon any agent of such motor carrier within such state." In our opinion, this clearly refers to a real "agent" in the nature of an employee that may be found in the state. It also refers to the statutory designated agent, that is, the Secretary of State, under Section 13-3-63. The Legislature of this state made the Secretary of State an agent for all process in any case involving the operation of a motor vehicle in this state. This designated agent easily would be the agent referred to in the above quote from Section 221. We are, therefore, forced to recognize first the clear principle of law that where Congress enacts statutes on a particular subject, it does not preempt and void the police power of the individual states, unless that is clearly mandated and required within the federal act. We do not have such a mandate in the present section. The federal act only stated that process "may" be served on the agent designated with the Public Service Commission. The operation of a vehicle on the highways of the states is a very small part of the Federal Motor Carrier Act, and as hereinabove stated in the above quoted cases, the purpose of Congress in enacting the Motor Carrier Act was to regulate the commercial aspect of vehicles operating in interstate commerce.
We, therefore, hold that the service of process under section 13-3-63 was valid.
The next question to be considered is whether or not this Court may and should reverse and remand the cause for another hearing on the question of damages only. The motion filed by appellant and considered by the court from which the appeal was taken, did not contend that the default judgment was a result of fraud, undue influence, or any other reason that would render the default judgment void as to liability. We have held in many cases that the power of a court to set aside a default judgment ends with the term of court within which it is rendered, unless the facts and references thereto prove that the lower court did not have jurisdiction to hear the writ of inquiry and enter the default judgment. There is no contention that appellant did not receive the summons through Mississippi's Secretary of State in due course and did not make any appearance in the cause, although summons was issued, served and returned properly. We hold, therefore, that as to the rendering of the default judgment by the lower court on October 19, 1979, the judgment became final on the issue of liability when the term ended. See Martin v. Armstrong, 350 So.2d 1353 (Miss. 1977); Alexander v. Killebrew, 321 So.2d 488 (Miss. 1975); Western Chain Co. v. Brownlee, 317 So.2d 418 (Miss. 1975); Overstreet v. Liberty Mutual Ins. Co., 263 So.2d 528 (Miss. 1972); Walker George, Jr., etc. v. Standard Oil Co. of Ky., 239 Miss. 712, 124 So.2d 858 (1960); and Hayes Produce Co. v. Taylor, 213 Miss. 217, 56 So.2d 503 (1952).
Appellant contends that the amount of the default judgment was against the evidence and that the lower court did not have sufficient evidence on which to base the amount of its verdict. Although we cannot take jurisdiction of the basic part of the case, that is, the liability question, because of the reasons stated above, we find that both precedent and the inherent power of the Court require that we review the amount of the award, even though under a *1299 default judgment. There was no record made of the evidence presented to the Court on the writ of inquiry.
During the hearing on appellant's Motion to Quash Process and Set Aside Default Judgment, it offered evidence as to what evidence was presented to the lower court on the question of damages. In its motion appellant requested a review of the amount. In its proffer of evidence, appellant, as heretofore stated, questioned appellee under oath. She was a bit hazy as to everything that occurred during the presentation of evidence on the writ of inquiry. Only she and her husband testified. She stated that after the collision she was "shook up." She was taken from the scene by automobile. Although she was transported to a hospital where x-rays were taken, she was not confined to the hospital. She did not know the amount of her medical bills, stating that she had "no idea at this point." At the time of the collision, appellee was on sick leave from her position with the telephone company. She testified that she consulted a physician for injuries received in the collision some four to eight times. No medical bills or medical reports were introduced and no medical testimony of any kind received except that from appellee and her husband. It was stipulated that the entire amount of the award constituted compensatory damages, and that there were no punitive damages allowed. As stated, the proceedings at the writ of inquiry were not transcribed by the court reporter, and we therefore do not have the benefit of that helpful recorded information. The evidence presented at the hearing on appellant's motion is all that is before us, and it is undisputed.
In the case of Ishee v. Dukes Ford Co., 380 So.2d 760 (Miss. 1980), we had the same issue before us. Although the opinion did not state that the action of the appellant (defendant below) was subsequent to the term of court during which the default judgment was entered, a study of the record reveals that all action taken by the defaulting defendant was after the term ended. We reversed and remanded for a new trial on damages only stating that the court did not use the proper method for determining the damages sustained by the plaintiff.
Under the undisputed evidence in the record before us, we are forced to hold that we do not find sufficient evidence to sustain the amount of the lower court's award on damages. On the contrary, the record before us reveals that the award was excessive. We, therefore, reverse the cause and remand to the lower court for another hearing on the question of damages only.
REVERSED AND REMANDED.
PATTERSON, C.J., and BROOM, LEE, BOWLING and HAWKINS, JJ., concur.
SMITH and ROBERTSON, P. JJ., and SUGG and WALKER, JJ., dissent.
SMITH, Presiding Justice, dissenting:
With deference, I respectfully dissent from the conclusion of the majority that the trial court acquired personal jurisdiction of appellant by service of process on the Mississippi Secretary of State under the long arm nonresident motorist statute.
The suit which resulted in the default judgment in this case was brought by Nellie M. Gammill against Trailer Express and its driver, Jack Clements. However, no process was ever had upon Jack Clements.
Trailer Express is an Indiana corporation, duly licensed by Mississippi Public Service Commission under the Mississippi Motor Carrier Regulatory Act of 1938, as amended, and is engaged as a common carrier in interstate commerce. It had duly qualified under the Federal Motor Carrier Act of 1935, 49 U.S.C.A. section 321(c) (1963), now 49 U.S.C.A. section 10330 (1981), and in compliance with that Act, had appointed and was maintaining a resident agent for the service of process in Mississippi.
No effort was made by plaintiff to obtain personal jurisdiction of Trailer Express by service on its resident agent. Instead, plaintiff proceeded under Mississippi Code Annotated section 13-3-63 (Supp. 1980), sometimes referred to as the long arm non-resident *1300 motorist statute, and process was attempted to be served upon Trailer Express under that statute through service upon the secretary of state under the legal fiction that he was an agent of Trailer Express. Service on the secretary of state was had on September 20, 1979. On the 29th day after service, the last day of the term, Trailer Express not having appeared, judgment by default was taken against it by plaintiff. A hearing was then conducted by the court, without a jury, upon a writ of inquiry on October 19, 1979 and judgment was entered in favor of appellee against appellant for $126,034.00.
Following adjournment of the term, appellant having learned of this, filed its motion to quash the process and set aside the default judgment, supported by affidavit that it had a meritorious defense. Also made a part of its record was its permit issued by the Mississippi Public Service Commission and designation of an agent for service of process in Mississippi. On November 23, 1979 the trial judge heard the motion.
No transcript had been made or record kept of the evidence adduced at the hearing upon the writ of inquiry which resulted in the default judgment against appellant for $126,034.00.
The trial court proceeded to hear evidence on appellant's motion, over objection of appellee. Appellee stipulated, however, that the affidavit filed by appellant in support of its motion was sufficient to establish necessary proof of a meritorious defense. Appellant called as an adverse witness the plaintiff, Nellie M. Gammill. This witness testified that no doctor had testified at the hearing on the writ of inquiry as to any injuries that she had received in the incident which gave rise to the suit, that no medical bills had been offered, that she was not hospitalized as the result and that she had stated that she was "okay" and had only been "shook up." She said she had no medical records with her and had no recollection of any hospital bills although she said she had seen a physician between four and eight times. At the conclusion of the hearing, the motion to quash process was denied and the motion to set aside the default judgment was overruled.
The issue in this case concerning the effectiveness of service of process under the Mississippi nonresident motorist statute [Mississippi Code Annotated section 13-3-63 (Supp. 1980)] rather than through personal service on appellant's lawfully designated resident agent is clearly defined. Trailer Express, an interstate common carrier engaged in interstate commerce, asserts that in qualifying in Mississippi as mandated by the Motor Carrier Regulatory Act of 1938 [Mississippi Code Annotated section 77-7-1 et seq. (1972)], and the Federal Motor Carrier Act of 1935, 49 U.S.C.A. section 321(c) (1963), now 49 U.S.C.A. section 10330 (1981) and by appointing a resident agent for process as required by the Federal statute, it assumed quasi-resident status for purposes of service of process, was not absent from the State, and was not amenable to service under the general nonresident motorist statute.
The Federal Motor Carrier Act of 1935, 49 U.S.C.A. section 321 (1963), mandated:
(c) Every motor carrier ... shall also file with the board of each State in which it operates and with the Interstate Commerce Commission a designation in writing of the name and post office address of a person in such State upon whom process issued by or under the authority of any court having jurisdiction of the subject matter may be served in any proceeding at law or equity brought against such carrier. Such designation may from time to time be changed by like writing similarly filed. In the event such carrier fails to file such designation, service may be made upon any agent of such motor carrier within such State. (Emphasis added).
"In the event" the carrier "fails to make such designation" the Act provides that process may be served otherwise. There is no provision in the statute for service of process other than in cases where the carrier has failed to appoint such an agent.
*1301 In the above quoted version of the Federal Act, the words "in the event" (of the failure to designate a resident agent) express the single condition or contingency in which process may be served otherwise than upon the designated resident agent. The words "in the event of" are equivalent to "in the case of", or "in case of" and imply a condition and express a contingency. Tramell v. Tramell, 162 Tenn. 1, 32 S.W.2d 1025 (1930); Barmore v. Darragh, 231 S.W. 472 (Tex.Civ.App. 1921); Fischer v. Fischer, 75 N.J. Eq. 74, 71 A. 488 (1908); Roberts's App., 59 Pa. 70, 98 Am.D. 312 (1868); Hill v. Hill, 5 G. & J. 87 (Md. 1833).
The amended Act, 49 U.S.C.A. section 10330 (1981), provides:
(b) A motor carrier or broker providing transportation subject to the jurisdiction of the Commission under subchapter II of chapter 105 of this title ... shall designate an agent in each State in which it operates by name and post office address on whom process issued by a court with subject matter jurisdiction may be served in an action brought against that carrier or broker. The designation shall be in writing and filed with the Commission and with the authority of each State in which the motor carrier or broker operates having jurisdiction to regulate transportation by motor vehicle in intrastate commerce on the highways of that State. If a designation under this subsection is not made, service may be made on any agent of the carrier or broker within that State. (Emphasis added).
Like its predecessor, 49 U.S.C.A. section 321 (1963), supra, the present Act defines the only circumstance or condition when process may be served otherwise than upon the resident agent. It provides that: "If" (a designation is not made) "service may be made on any agent of the carrier or broker within that State."
In 42 C.J.S. If (1944), at 377, the meaning of the word "if" (used in the Act as presently written) is discussed:
In its more frequent use as a conjunction introducing a conditional sentence or clause, it means granting, allowing, or supposing that, or on condition that, in case that, or in the case of; and sometimes it is construed to mean provided, though, or when. The term imports a condition or contingency; it is an expressive word, quite commonly used to express a condition or dependence on the happening of some event, and is said to imply a condition precedent unless it be controlled by other words.
Other jurisdictions have similarly defined the word "if". In Bagnall v. Bagnall, 148 Tex. 423, 225 S.W.2d 401 (1949) the Supreme Court of Texas noted:
In this case the writer of the instrument begins the conditional clause with the conjunction "if," which clearly expresses a condition. The use of this word in itself implies a condition; it means "provided," or "in case that." (225 S.W.2d at 402).
The Court of Appeals of Kentucky in Points v. Points, 312 Ky. 348, 227 S.W.2d 913 (1950), enunciated the following:
Counsel agrees that the word "if" is a typical conditional particle used to introduce another part of a sentence. Here it means "in the event," or as we held in Ellison v. Smoot's Adm'r., 286 Ky. 768, 151 S.W.2d 1017, 1019, the word is synonymous with the expression "in case that." We have no difficulty in concluding what testator intended by the use of the quoted words. (227 S.W.2d at 915).
It is clear that 49 U.S.C.A. section 10330 (1981) does not change the meaning of 49 U.S.C.A. section 321 (1963), in that it requires service under the Federal Act unless no agent is designated.
The general nonresident motorist statute, Mississippi Code Annotated section 13-3-63 (Supp. 1980), states broadly that any nonresident or its agent, operating a motor vehicle on Mississippi highways and streets, impliedly appoints the Mississippi Secretary of State as its agent for service of process. The obvious objective of the Mississippi long arm nonresident motorist statute is to provide a means for obtaining service upon nonresidents not otherwise reachable by the *1302 process of Mississippi courts. It provides the means of reaching the nonresident motorist who enters the State, incurs a justiciable liability, and departs the jurisdiction. At the time of the incident out of which appellee's claim arose, appellant was present in this state, and has been present continuously since, by duly appointed resident agent. Notwithstanding the general wording of the Mississippi nonresident motorist statute, the designation of a resident agent by an interstate common carrier under the Federal Motor Carrier Act, supra, in Mississippi, upon whom personal service may be obtained, must be considered as removing it from the purview of the Mississippi statute.
Federal law providing for service on interstate common carriers via registered resident agent must be considered preemptive.
Article I, Section 8 of the United States Constitution grants to the sovereign the right to regulate commerce among the several states. The exclusiveness of Federal law in the field of interstate commerce is reflected by Article 7, Section 186 of the Mississippi Constitution of 1890, which vests in the state the power to regulate intrastate commerce.
Appellant is qualified to do business as an interstate common carrier by virtue of the Interstate Commerce Act, the Federal Motor Carrier Act of 1935, and the Mississippi Motor Carrier Regulatory Act of 1938. Under the Federal Act, the appellant must designate a resident agent for service of process in each state through which it operates. The Mississippi Motor Carrier Regulatory Act of 1938 [Mississippi Code Annotated section 77-7-1 et seq. (1972)], while silent concerning appointment of an agent for service of process, is modeled after the Federal Motor Carrier Act and must, therefore, be construed as complementary and in consistency therewith. See Dixie Greyhound Lines v. Public Service Commission, 190 Miss. 704, 200 So. 579, 1 So.2d 489 (1941). Strict compliance with the Mississippi Act is mandatory on motor carriers [Mississippi Code Annotated section 77-7-11 (1972)]. The appellant, in complying with these statutes, has designated a resident agent for service of process in Mississippi.
Although there is a dearth of case law from state courts of last resort concerning service of process on an interstate carrier under a state nonresident motorist statute, in defiance of service on the agent designated under the Federal Act, the Supreme Court of our sister State of Georgia seems to have made a cogent approach to a closely analogous problem. In Georgia, motor carriers are subject to the following code provision:
68-618 Agents for service on nonresident motor common carriers; service of process upon motor common carriers; venue; enforcement by commission
(a) Each nonresident motor common carrier shall, before any certificate or other authority is issued to it under this Chapter or at the time of registering as required by section 68-633, designate and maintain in this State an agent or agents upon whom may be served all summonses or other lawful processes in any action or proceeding against such motor common carrier growing out of its carrier operations, and service of process upon or acceptance or acknowledgment of such service by any such agent shall have the same legal force and validity as if duly served upon such nonresident carrier personally, and such designation shall be in writing, shall give the name and address of such agent or agents, and shall be filed in the office of the commission. Upon failure of any nonresident motor common carrier to file such designation with the commission or to maintain such an agent in this State at the address given, such nonresident carrier shall be conclusively deemed to have designated the Secretary of State and his successors in office as such agent; and service of process upon or acceptance or acknowledgment of such service by the Secretary of State shall have the same legal force and validity as if duly served upon such nonresident carrier personally, provided, that notice of such service and a copy of the process are forthwith sent by registered mail by the *1303 Secretary of State, or his successor in office, to such nonresident carrier, if its address be known. Service of such process upon the Secretary of State shall be made by delivering to his office two copies of such process with a fee of $4. [Emphasis added]. [Ga. Code Ann. § 68-618 (1980)].
The Georgia Supreme Court has interpreted this section as exclusive for purposes of service of process, where an appointment has been made, as appears in the following excerpt from Southeastern Truck Lines, Inc. v. Rann, 214 Ga. 813, 815, 108 S.E.2d 561, 563 (1959):
The plaintiffs in their brief, however, contend that jurisdiction was properly acquired over the defendant Southeastern Truck Lines, Inc., in the Paulding Superior Court by virtue of the act of 1937, commonly known as the Non-Resident Motorist Act (Ga.L. 1937, p. 732), Code Ann. § 68-801 et seq., as amended by the act of 1955 (Ga.L. 1955, p. 650), and the act of 1959 (G.L. 1959, p. 120). This contention is without merit, for the reason that service and jurisdiction of foreign motor common carriers are prescribed and controlled by the provisions of Code § 68-618, and the provisions of the Constitution, and they are not suable under the Non-Resident Motorist Act (supra). United Motor Freight Terminal Co. v. Driver, 74 Ga. App. 244, 39 S.E.2d 496.
See also 61 C.J.S. Motor Vehicles § 502(2), p. 274 (1970).
The Georgia Supreme Court solution of a problem closely similar to that under consideration here was reasonable and sound and gave meaning to the provision in the Georgia statute requiring service on the resident agent, if one has been appointed. The theory of appellee here, appears to be that the provision in the Federal Act that process may be served on an agent other than the designated resident agent "in the event" or "if" no resident agent has been appointed, is utterly meaningless.
The plain intendment of the Federal Act, expressed as clearly as the English language can disclose it, is that process from courts having subject matter jurisdiction must be served upon the resident agent (if there is one) in order to give the court having "subject matter" jurisdiction, "personal" jurisdiction of a defendant. The failure of the carrier to appoint a resident agent is the single exception, as is clearly stated in the statute. Therefore, the trial court did not acquire personal jurisdiction of the defendant-appellant and was without jurisdiction to render judgment against it. The motion to quash the attempted service and set aside the default judgment should have been sustained. After all, it would appear that compliance with the Act imposes no hardship  in fact it would be cheaper, quicker and more certain.
It is noteworthy that, although a very great many citations are listed in the majority opinion as supporting principles about which there is no controversy, no case whatever is cited from a state court of last resort, and certainly none from a Federal Court of Appeals or from the Supreme Court of the United States, touching the point at issue. Apparently no United States District Court Judge has rendered a decision in keeping with the view of the majority as to the proper construction of the Federal Act. However, two cases are cited as supporting the majority opinion. Both are trial court judges' decisions from counties in the State of New York. In one of these the trial judge's opinion is quoted almost in its entirety and comprises a major portion of the majority opinion. The views expressed are those of the trial judge in each of the cited cases and have not been adopted by the Court of Appeals of the State of New York and, so far as we have been able to discover, by the trial judges in other counties of the State of New York. What the New York Court of Appeals, the court of last resort in that state, would hold if confronted with the question is, of course, unknowable. An examination of the quoted trial judge's opinion shows that, while of noteworthy length, in some measure he proceeded on a philosophical basis and does not appear to have attempted a precise construction of the plain language of the Federal *1304 Act. I have read these opinions, on which the majority depends for support of its conclusion, with considerable interest but I find myself unpersuaded, since they are in the face of the expression in the Act itself of a legislative intent, in clear and unambiguous language, to the contrary.
Nor is the suggestion valid that the Federal Act does not apply to tort actions arising out of negligence in the operation of a carrier's trucks. There is nothing in the Act to so indicate and several courts have held that the Federal Process Act does apply in such cases. See Sansbury v. Schwartz, 41 F. Supp. 302 (D.C.D.C. 1941); Olson v. Midstates Freight Lines, Inc., 173 N.Y.S.2d 711, 12 Misc.2d 897 (1958). Nor is the Act limited by its own terms or otherwise to cases in which the cause of action arose out of commercial transactions. See Esperti v. Cardinale Trucking Corporation, 263 A.D. 46, 31 N.Y.S.2d 253 (1941).

FIAT JUSTITIA RUAT COELUM
Notwithstanding the above, majority has recognized that an injustice has been done and has remanded the case for trial on the "issue of damages alone." Obviously, this is better than giving no relief to appellant and, although it does not, in my humble opinion, provide complete justice, if the judgment is not to be set aside and the case tried on its merits, (in which event appellee should expect to prevail if the facts warrant it) I concur in the conclusion that the case is one that must be sent back.
In City of Starkville v. Thompson, 260 So.2d 191 (Miss. 1972), in holding that bad motive or actual fraud is unnecessary in order to justify the setting aside of a judgment, this Court quoted from one of its earlier decisions, Gardner v. Price, 199 Miss. 809, 25 So.2d 459 (1946), as follows:
It is not a question, it seems to us, of whether such a pronouncement by the court was a judicial determination, or of whether the court had authority to make it; but it is a question of fairness and conscience. (199 Miss. at 816, 25 So.2d at 461).
In my view, this case falls within the rule stated.
Upon retrial as to damages alone appellant will be afforded an opportunity to show the facts of appellee's alleged injury, and, if it can be shown, to have any award that may result, diminished in the proportion that negligence on her part, if any, may have caused or contributed to the accident. Mississippi Code Annotated section 11-7-15 (1972).
This Court in Mississippi Cent. R. Co. v. Smith, 176 Miss. 306, 168 So. 604 (1936), appeal dismissed, 299 U.S. 518, 57 S.Ct. 313, 81 L.Ed. 382 (1936), said:
Where a case is remanded by this court to the trial court for a new trial on the question of damages only, all of the facts which enter into the fixation of the damages are admissible in evidence. New Orleans & N.E.R. Co. v. Snelgrove, 148 Miss. 890, 115 So. 394; Illinois Cent. R. Co. v. Humphries, [174] Miss. [459], 164 So. 22, 102 A.L.R. 549. One of the appellant's contentions is that the appellee was guilty of negligence which contributed to her injury. Under section 511, Code of 1930 [Mississippi Code Annotated section 11-7-15 (1972)] contributory negligence is not a bar to an action for damages, "but damages shall be diminished by the jury in proportion to the amount of negligence attributable to the person injured." (176 Miss. at 321, 168 So. at 605).

CONCLUSION
Let justice be done though the heavens fall.
ROBERTSON, P.J., and SUGG and WALKER, JJ., join in this dissent.